TOM–WAT, INC., d/b/a W.A.
International, Appellant
(Plaintiff Below),

v.

George FINK, d/b/a, GF Associates,
Appellee (Plaintiff Below).

No. 31S01–0101–CV–28.

Supreme Court of Indiana.

Jan. 12, 2001.

George M. Plews, Thomas A. John, Indianapolis, Indiana, Attorneys for Appellant.

Gordon D. Ingle, Corydon, Indiana, Attorney for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

We grant transfer in this case to reiterate the correct standard and process for deciding issues of personal jurisdiction.

### Factual and Procedural Background

Tom–Wat, Inc., doing business as W.A. International, is a Connecticut corporation based in that state. George Fink, d/b/a GF Associates, is a sole proprietorship with its principal place of business in Corydon, Indiana. In 1987, Fink ordered goods from Tom–Wat worth $28,947.45. When Fink failed to pay for all of the goods, Tom–Wat filed suit in Connecticut and obtained a default judgment against Fink. On September 7, 1994, Tom–Wat filed suit in Harrison Circuit Court to enforce its Connecticut judgment.

On October 31, Fink filed an answer to the complaint and also moved to dismiss based on lack of personal jurisdiction of the Connecticut court. He accompanied this motion with a conclusory affidavit that stated that he had never done business in Connecticut, but supplied no specifics. Because this motion was supported by an affidavit, it was properly viewed as a motion for summary judgment on the ground that the judgment on which Tom–Wat based its complaint was defective. Ind.Trial Rule 12(B).

On December 5, Tom–Wat filed a response to Fink's motion with designations of material questions of fact. One month later, on January 4, 1995, Tom–Wat filed a cross-motion for summary judgment supported by a brief, designations, and an affidavit. Tom–Wat claimed that summary judgment was appropriate because it had a valid Connecticut judgment and there were no genuine questions of material fact as to whether Connecticut had jurisdiction over Fink.

On August 9, 1995, Tom–Wat requested a hearing on its motion for summary judgment. On November 11, 1997, Tom–Wat again requested a hearing, and one was set for February 1998, but Fink moved for a continuance and the hearing was reset for March 25. Two days before the hearing, Fink filed a designation of material questions of fact and two affidavits in opposition to Tom–Wat's motion for summary judgment. These affidavits established that Fink had placed the orders with Tom–Wat as a result of a face-to-face meeting in Louisiana and had never gone to Connecticut for any purpose. The trial court then continued the hearing on its own motion. On March 31, Tom–Wat filed a motion to strike the materials filed by Fink on March 23. There is no ruling in the record on this motion. The hearing occurred on May 15, but there is no record of the hearing because the transcript was lost by court personnel. On July 18, in a single order, the trial judge denied both Tom–Wat's motion for summary judgment and

Fink's motion to dismiss and recused himself. He has since retired.

Tom–Wat filed an interlocutory appeal of the order denying the motions for summary judgment. The Court of Appeals held that "[l]ogic dictates ... that one of the two parties should prevail: either the Connecticut court had jurisdiction over Fink or it did not." *Tom–Wat, Inc. v. Fink,* No. 31A01–9901–CV–31, 727 N.E.2d 1131 (Ind.Ct.App. May 3, 2000) (mem.). The court then remanded the case to the trial court to determine whether the Connecticut court had jurisdiction over Fink. Judge Kirsch dissented, contending that on this record it was established that the Connecticut court had no jurisdiction over Fink, and Fink was entitled to summary judgment.

## I. The Issues on Appeal and Standard of Review

■ As a preliminary matter, we note that an interlocutory appeal raises every issue presented by the order that is the subject of the appeal. *Harbour v. Arelco, Inc.,* 678 N.E.2d 381, 386 (Ind.1997). Because the interlocutory order denied both Tom–Wat's and Fink's motions, we must address both motions.

Tom–Wat contends that the trial court struck Fink's late-filed responses or, alternatively, if it did not, that it erred by failing to strike them. Tom–Wat then argues that, if Fink's affidavits are correctly stricken, no facts are presented in opposition to its motion. Therefore, because Fink has the burden of establishing a flaw in the Connecticut judgment, Tom–Wat's motion for summary judgment must be granted. The Court of Appeals determined that jurisdiction was either present or not, but remanded to the trial court to decide that issue because the record did not reveal the reasons for the trial court's decisions.

■ On appeal, the standard of review of a summary judgment motion is the same as that used in the trial court: summary judgment is appropriate only where

the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind.Trial Rule 56(C); *Shell Oil Co. v. Lovold Co.,* 705 N.E.2d 981, 983–84 (Ind. 1998). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Id.; Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997). The review of a summary judgment motion is limited to those materials designated to the trial court. T.R. 56(H); *Rosi v. Business Furniture Corp.,* 615 N.E.2d 431, 434 (Ind.1993). We must carefully review decisions on summary judgment motions to ensure that the parties were not improperly denied their day in court. *Estate of Shebel ex rel. Shebel v. Yaskawa Elec. Am., Inc.,* 713 N.E.2d 275, 277 (Ind.1999).

■ As this Court recently held, "[p]ersonal jurisdiction is a question of law and, as such, it either exists or does not." *Anthem Ins. Cos. v. Tenet Healthcare Corp.,* 730 N.E.2d 1227, 1237 (Ind.2000). If there is no factual dispute bearing on the jurisdictional issue, the appellate court will make a final determination with respect to a pure question of law or a mixed question of law and fact not involving disputed material facts. In this case, both Fink's and Tom–Wat's motions for summary judgment turn on whether personal jurisdiction existed in Connecticut. This presents a question of law because here the affidavits filed by the parties do not raise any factual disputes. Rather, to the extent they conflict, they do so only as to legal conclusions.

## II. Motion to Strike

There is no ruling in the record on Tom–Wat's motion to strike Fink's late-filed affidavits and the trial court lost the transcript of the hearing on the motion. The parties dispute whether the motion was granted or taken under advisement at the hearing. Tom–Wat contends that the trial court erred by not granting its motion to strike Fink's filings in opposition to Tom–

Wat's motion for summary judgment because Fink filed them more than three years after Tom–Wat filed its motion for summary judgment. Alternatively, Tom–Wat contends that the trial court did grant the motion to strike the late-filed affidavits as to Tom–Wat's motion, but not as to Fink's motion. Fink counters that it is within the trial court's discretion to accept late filings. Fink's attorney supplied an affidavit that stated that the trial court did not grant the motion to strike, but merely refused to receive live testimony at the hearing.

■ We accept the claims in both parties' appellate briefs as their good faith understanding of what the trial court did or did not do. However, we cannot resolve that dispute and there is no record that the trial court granted Tom–Wat's motion to strike. This Court recently held that, "[i]t is within the trial court's discretion to accept an affidavit filed later than the date specified in the rule." *Indiana Univ. Med. Ctr. v. Logan,* 728 N.E.2d 855, 858 (Ind.2000). This is based on the language of Trial Rule 56, which reads, "[t]he court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories or further affidavits.... The Court, for cause found, may alter any time limit set forth in this rule." Therefore, it is clear that the trial court had the discretion to accept or reject the late-filed documents.

■ The one thing we do know is that the trial court denied both motions for summary judgment. There is no record of a grant of the motion to strike. Failing to strike the late affidavits was not an abuse of the trial court's discretion for several reasons. First, Fink filed an affidavit in support of his motion at the time he filed his motion. This affidavit, in conclusory terms, denied that Fink had done business in Connecticut. The late-filed affidavits can be viewed as merely supplementing Fink's timely-filed affidavit with specific facts. Moreover, the facts in Fink's second affidavits do not appear to be in genuine dispute, as nothing from Tom–Wat claims any activity by Fink in Connecticut. For these reasons, the trial court did not abuse its discretion in failing to strike Fink's affidavits in ruling on the motions for summary judgment.

### III. Tom–Wat's Motion for Summary Judgment

Tom–Wat contends that the trial court erred by denying its motion for summary judgment because Fink did not meet his burden of proof of establishing that Connecticut did not have jurisdiction over him. Tom–Wat alleges in an affidavit that Fink had the following contacts with Connecticut: (1) Fink's credit application was returned to Tom–Wat in Connecticut; (2) Fink placed several orders with Tom–Wat; and (3) after Tom–Wat shipped the goods to Fink, Fink made two payments to Tom–Wat. Tom–Wat does not claim that Fink, or any employee or agent of Fink, was ever present in Connecticut. Fink responds that (1) he entered into a verbal agreement with Tom–Wat in Louisiana for the sale of a line of goods; (2) the goods were shipped to Corydon; (3) a Tom–Wat representative visited Fink in Corydon and inspected the goods; (4) Fink has never conducted any other business in Connecticut; (5) Fink has never been to Connecticut; and (6) the transactions that are the subject of the lawsuit are his only dealings with Tom–Wat. In sum, the facts established by both parties present a familiar pattern: Buyer (Fink) is never physically present in Seller's (Tom–Wat) state, but places an order (or orders) with Seller to be shipped from Seller's facility in Seller's state.

■ Under the Full Faith and Credit Clause of the Constitution of the United States, the courts of this state are obligated to enforce a judgment of the courts of a sister state. *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass'n,* 455 U.S. 691, 704, 102 S.Ct. 1357, 71

L.Ed.2d 558 (1982). However, that is true only if the court rendering the judgment had jurisdiction over the party against whom the judgment is sought to be enforced. *Id.* Connecticut law governs the personal jurisdiction of that state's courts over Fink. *Tietloff v. Lift–A–Loft Corp.,* 441 N.E.2d 986, 988 (Ind.Ct.App.1982). "The judgment of a sister state, regular and complete upon its face, is prima facie valid." *Varoz v. Estate of Shepard,* 585 N.E.2d 31, 33 (Ind.Ct.App.1992). There is authority for the proposition that the federal constitution itself places the burden of proof of lack of personal jurisdiction on the party opposing enforcement of a foreign judgment. *Cf. Packer Plastics, Inc. v. Laundon,* 214 Conn. 52, 570 A.2d 687, 689–90 (1990) (interpreting the Full Faith and Credit Clause and United States Supreme Court opinions to require "that the judgment of another state must be presumed valid, and the burden of proving a lack of jurisdiction rests heavily upon the assailant" (citation omitted)). Even if there were no federal constitutional requirement, this suit to enforce the Connecticut judgment is brought in an Indiana court, and its procedures are governed by Indiana law. Indiana law places the burden on the defendant because lack of personal jurisdiction is an affirmative defense. *Tietloff,* 441 N.E.2d at 988; Ind.Trial Rule 8(C). Accordingly, to prevail, Fink must establish by a preponderance of the evidence that Connecticut did not have jurisdiction over him. *Tietloff,* 441 N.E.2d at 988.

Connecticut law requires a two-part inquiry to resolve questions of personal jurisdiction: (1) whether the long-arm statute authorizes assertion of jurisdiction, and (2) if the statutory requirements are met, whether exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment. *Knipple v. Viking Communications, Ltd.,* 236 Conn. 602, 674 A.2d 426, 428–29 (1996). This is the same analysis Indiana requires as recently articulated by this Court in *Anthem Insurance Cos. v. Tenet Healthcare Corp.,* 730 N.E.2d 1227, 1232 (Ind.2000).

■ There is no claim that Fink is subject to the general jurisdiction of Connecticut courts by reason of his ongoing activities in that state. Rather, Tom–Wat relies on specific jurisdiction, i.e., jurisdiction to resolve this dispute, conferred by the events giving rise to these transactions between the parties. The only enumerated jurisdictional basis in Connecticut's long-arm statute that is relevant here is the Connecticut counterpart to Indiana Trial Rule 4.4(A)(1): "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, or foreign partnership ... who in person or through an agent: (1) Transacts any business within the state...." Conn. Gen.Stat. § 52–59b (2000). The Connecticut Supreme Court has held that this includes "a single purposeful business transaction." *Zartolas v. Nisenfeld,* 184 Conn. 471, 440 A.2d 179, 181 (1981).

■ As is usually the case where the enumerated basis of jurisdiction is "doing business" or "transacting business" in the state, the generality of the phrase, together with the doctrine that the state intends to exercise the broadest jurisdiction consistent with the Constitution, makes the decision turn on the Fourteenth Amendment limitations on state court jurisdiction. Thus, the issue becomes whether the exercise of personal jurisdiction by the Connecticut court over Fink was consistent with the Due Process Clause. In order to have specific personal jurisdiction over Fink, Fink must have minimum contacts with Connecticut. These contacts must result from the purposeful actions of the defendant and arise from the basis of the lawsuit. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Anthem,* 730 N.E.2d at 1235. The Supreme Court has stated that a single act can support jurisdiction so long as it creates a "substantial connection" with the forum state and the

suit is based on that connection. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). However, the act must be purposeful, not a "random, fortuitous, or attenuated contact[ ], or ... the unilateral activity of another party or a third person." *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174 (citations and internal quotations omitted).

■■■■■ If the contacts are sufficient, then the court must evaluate whether the exercise of personal jurisdiction offends traditional notions of "fair play and substantial justice." *Id.* at 476, 105 S.Ct. 2174. The United States Supreme Court has set out five factors that must be balanced to determine whether the assertion of jurisdiction is reasonable and fair. They are: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenience and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174; *Panganiban v. Panganiban,* 54 Conn.App. 634, 736 A.2d 190, 194 (1999). These interests must be balanced and weighed to make certain that asserting jurisdiction is fair in a particular case.

In *Loctec Corp. v. Hawk Golf Bag Co.,* 1996 WL 409286 (Conn.Super.Ct.1996), a Connecticut court determined that exercising jurisdiction over an out-of-state defendant violated "traditional notions of fair play and substantial justice" because:

> the contract at issue herein was entered into either by telephone or by fax, and there is no indication that any of [defendant's] agents ever entered this state. There is also no evidence that [defendant] had any previous contacts with [plaintiff] or that it had an office, sales representative, bank account, or employees in this state or that it advertised or solicited business in Connecticut, all

things that normally indicate a sufficient connection with a forum state to confer personal jurisdiction over a foreign corporation.

*Id.* at *2. The same is true of Fink. Fink took no steps in Connecticut to do business with Tom–Wat. In this case, rather than order by mail, telephone, fax, or the Internet, Fink met face-to-face with Tom–Wat's representatives in Louisiana. If anything, this is less of a contact with Connecticut than the orders placed via interstate communications, but, taking Tom–Wat's facts as unchallenged, subsequent orders were placed by some means that arrived at its offices in Connecticut. Fink says that he is a sole proprietorship and has never been to Connecticut. Tom–Wat presents no evidence that Fink advertised, had a bank account or employees, or solicited business in Connecticut.

The only Connecticut connection alleged by Tom–Wat is "[i]n May 1987, GF Associates submitted a credit application to Tom–Wat in Connecticut. Pursuant to that application, Tom–Wat opened account no. 000162 in the name of GF Associates to cover its purchases." Tom–Wat seeks to describe this as Fink's maintaining "a credit account in Connecticut." However, it is apparently nothing more than an open receivables account on Tom–Wat's books. It is not of the same character as maintaining a bank account, which is often cited as a factor favoring jurisdiction. In support of its proposition that a "credit account" may be a basis for personal jurisdiction, Tom–Wat relies on two Delaware cases in which the sellers, Delaware corporations, extended credit to out-of-state buyers. In both cases, the buyers' contacts in Delaware were significantly greater than Fink's contacts with Connecticut. Representatives of both buyers visited Delaware, there were over 500 orders placed during a period of five years in one case, and in the other, the seller made parts to order for the out-of-state company. *Wilmington Supply Co. v. Worth Plumbing & Heating, Inc.,* 505 F.Supp. 777, 781 (Del. 1980); *Mid–Atlantic Mach. & Fabric, Inc.*

v. *Chesapeake Shipbuilding, Inc.*, 492 A.2d 250, 253–55 (Del.Super.Ct.1985). In sum, *Loctec* seems squarely on point and Fink's contacts with Connecticut were not such that he could "reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174.

Further examination of the *Burger King* factors supports this conclusion. As to the burden on the defendant, Fink runs a small company in Indiana and does not appear to have vast financial resources to defend a suit halfway across the country. Furthermore, although it is more convenient for Tom–Wat to file in Connecticut, Tom–Wat is more than able to file and prosecute an action in Indiana, as evidenced by its conduct in the current case. Connecticut has an interest in protecting its corporations, but this interest is not as great as some other interests, including protecting insureds and guarding against fraud. Also, Indiana has an interest in protecting its business owners from defective goods. As to the interstate judicial system's interest in obtaining the most efficient resolution of controversies, there do not appear to be more witnesses in Connecticut than Indiana and it is not clear that there will be greater travel expenses or inconvenience for more people if the suit is tried in Indiana. Finally, there do not appear to be fundamental substantive social policies at stake in this controversy.

*McGee*, 355 U.S. at 220, 78 S.Ct. 199, does not support Connecticut's jurisdiction here. In that case, the United States Supreme Court held that California courts could exert specific personal jurisdiction over an Arizona insurance company that had no contact with California except that it assumed a policy that its predecessor sold to a California resident and renewed the policy through the mail. Specifically, the Court noted that:

> California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold them legally accountable. When the claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof.

*Id.* at 223, 78 S.Ct. 199. Even apart from the specific concerns arising from the enforcement of insurance policies, the seller of a product into a state can fairly be said to have availed itself of a marketplace in that state. In the current case, there are none of the special concerns of an insurer-insured relationship, and Tom–Wat can file suit in Indiana to recover its money from Fink. We conclude, subject to Part IV, that Connecticut's exercise of personal jurisdiction over Fink violates the Due Process Clause because the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice." .

## IV. Fink's Motion

Because of the confusion over whether Fink's second affidavits were considered by the trial court, or, if so, as to which motion, it is unclear that Tom–Wat had a fair opportunity to respond to Fink's affidavits. We find the facts in those affidavits dispositive, and are therefore reluctant to foreclose Tom–Wat from countering the facts asserted in those affidavits. Accordingly, we remand with instruction to allow Tom–Wat to present evidence countering Fink's second affidavits. If there is none, the trial court should enter summary judgment for Fink.

## Conclusion

The trial court's denial of Fink's motion for summary judgment is reversed. This case is remanded for proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.