ATTORNEY FOR APPELLANT
Robert E. Duff
Lebanon, Indiana

ATTORNEY FOR APPELLEE
Julianne Nixon Sheeks
Greenfield, Indiana

ATTORNEYS FOR AMICUS CURIAE
AUTOMOBILE DEALERS ASSOCIATION OF
INDIANA, INC.
Ronald C. Smith
Donn H. Wray
Marc A. Menkveld
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA LEGAL FOUNDATION
Paul L. Jefferson
T. Joseph Wendt
Indianapolis, Indiana

_____



FILED
Oct 29 2013, 2:32 pm

CLERK
of the supreme court,
court of appeals and
tax court

## In the
## Indiana Supreme Court

_____

No. 49S02-1302-CT-89

HEATHER N. KESLING,

*Appellant (Plaintiff below),*

v.

HUBLER NISSAN, INC.,

*Appellee (Defendant below).*

_____

Appeal from the Marion Superior Court, No. 49D12-0901-CT-2954
The Honorable Heather Welch, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1111-CT-1031

_____

**October 29, 2013**

**Rush, Justice.**

An auto dealership's advertisement of an inexpensive used car as a "Sporty Car at a Great Value Price," is textbook puffery—not actionable as deception or fraud, because a reasonable buyer could not take it as a warranty about the car's performance or safety characteristics. But

when the dealer has inspected the car and should know it has serious problems, answering a buyer's question about why it idled roughly by claiming that it "would just need a tune-up" may be actionable as fraud. We therefore hold that the buyer's fraud claim survives summary judgment, even though her deception claims cannot.

**Facts and Procedural History**

Viewed in the light most favorable to Plaintiff Heather Kesling as the non-moving party, the summary judgment record shows that in late 2007, Defendant Hubler Nissan, Inc. placed an ad on AutoTrader.com for a 1996 Mitsubishi Eclipse. Underneath several photos of the car, the ad stated:

| | |
|---|---|
| **Price** | $2,981 |
| **Body Style** | Hatchback |
| **Mileage** | 165,478 |
| **Exterior Color** | Maroon |
| **Interior Color** | Grey |
| **Engine** | 4 Cylinder Gasoline |
| **Transmission** | 4 Speed Automatic |
| **Drive Type** | 2 wheel drive - front |
| **Fuel Type** | Gasoline |
| **Doors** | Two Door |

\* \* \*

**Seller's Comments:** INTERNET SALE…REDUCED PRICE!! Trade-In, Automatic, Power Roof, CD/Cassette, Power Interior Options, Cruise, Fog lights, Alloy Wheels… *Sporty Car at a Great Value Price.*

Appellant's App. 105–07 (italic emphasis added).

Kesling saw the ad, then went to Hubler's lot on November 3, 2007 to see and test-drive the car. The salesperson immediately took them to the car but had to jump-start it before it could be driven. The car idled roughly, and Kesling asked the salesperson why. He answered that the car "would just need a tune-up" because "it had been sitting for a while." (In fact, though, the car had not been sitting for very long, since Hubler had taken it on trade just a couple of weeks earlier.)

Kesling offered $2,000 "plus tax and tag" for the car, and Hubler counter-offered $2,098 plus tax and document fees, for a total price of $2,322.88. Kesling agreed, and signed a sales contract memorializing the deal. She also signed an acknowledgement that the car was sold "AS

2

IS—NO WARRANTY . . . regardless of any oral statements about the vehicle." Immediately after completing the purchase, Kesling immediately went to an auto-parts store across the street from the dealership to have the car's computer-diagnostic codes read. But the car's diagnostic codes could not be retrieved, so Kesling took the car to another Mitsubishi dealership and an independent mechanic for detailed diagnoses and estimates. Both inspections showed extensive problems with the car well beyond needing a tune-up. Ultimately, she only drove the car 44 miles before parking it in long-term storage as undrivable.

More than two years later, Kesling obtained an expert inspection for purposes of this litigation. The expert's report revealed a loose tie rod and misrouted accessory belt, either of which the expert stated could cause loss of steering control. Moreover, the engine had a fuel-return line that had been blocked off, leaked fuel, and could cause the car to catch fire while driving. And because there was no provision for connecting the blocked-off line to the other systems of the car—and other signs, including poorly spliced wiring—the original engine had apparently been replaced with one from a different Mitsubishi model. According to the expert, each of these three problems made the car unsafe to operate, and would have been obvious to anyone who would have inspected or serviced the car at a dealership—such as during a routine trade-in inspection of the type Hubler admitted having performed.

Kesling sued Hubler, alleging that advertising the car as a "Sporty Car at a Great Value Price" (1) violated the Indiana Deceptive Consumer Sales Act and (2) entitled her to treble damages and attorney fees under the Crime Victim's Relief Act, Ind. Code § 34-24-3-1 (2008 Repl.), because the ad also constituted criminal deception, I.C. § 35-43-5-3(a)(9) (2008 Repl.). She also alleged (3) that the salesperson's representation that the car "would just need a tune-up" was fraudulent, since the defects should have been apparent during the trade-in inspection.

The trial court granted Hubler's motion for summary judgment on all counts. So far as relevant on transfer, the trial court reasoned that "Sporty Car at a Great Value Price" was "simply puffing" and made no substantive representation; that there was no evidence that the defects found by the expert witness were present when the car was sold; and that signing the "as-is" disclaimer and immediately having the car inspected *after* purchase showed Kesling did not rely on Hubler's statement that the car "would just need a tune-up." Kesling appealed.

3

By a split decision, the Court of Appeals reversed. The majority agreed with Kesling that calling the car a "Sporty Car at a Great Value Price" could implicitly represent "that it is a good car for the price and that, at a minimum, it is safe to operate," thus precluding summary judgment on Kesling's deception claims. Kesling v. Hubler Nissan, Inc., 975 N.E.2d 367, 374 (Ind. Ct. App. 2012). It similarly found a question of fact as to whether the car had the tie rod, accessory belt, and fuel line defects when it was sold, and of whether Hubler actually knew of those defects when its salesperson failed to disclose them. Id. at 370, 374–75. In dissent, Judge Friedlander concluded that as a matter of law, "Sporty Car at a Great Value Price" was "typical used-car-sales puffery" and "devoid of content relative to the vehicle's operating status." Id. at 376 (Friedlander, J., dissenting). He did not separately address Kesling's fraud claim.

We granted transfer, 982 N.E.2d 298 (Ind. 2013) (table), vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A). We agree with Judge Friedlander that "Sporty Car at a Great Value Price" is classic puffery, which is fatal to Kesling's deception claims. But we agree with the Court of Appeals majority that Kesling has established an issue of fact as to her fraud claim based on the salesperson's statements. Accordingly, we affirm the trial court in part and reverse in part.

**Standard of Review**

We review a trial court's entry of summary judgment under the same standard as the trial court, and affirm "only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Tom-Wat, Inc. v. Fink, 741 N.E.2d 343, 346 (Ind. 2001). We look only to the materials properly designated to the trial court, and we take all facts and draw all reasonable inferences in favor of the non-moving party. Id.

Specific findings or conclusions made in the summary-judgment order help our review by giving insight into the trial court's rationale, but they do not change our standard of review. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). Nor does the trial court's decision to adopt a party's proposed order verbatim affect our review (though we do not encourage that practice). Carpenter v. Carpenter, 891 N.E.2d 587, 592–93 (Ind. Ct. App. 2008). In either event, our review of summary judgment is *de novo*, Kovach v. Caligor Midwest, 913 N.E.2d 193, 196 (Ind. 2009), and we apply that standard carefully to ensure that a litigant is not improperly denied a day in court, Tom-Wat, 741 N.E.2d at 346.

4

**Discussion**

## I. Kesling's Deception Claims.

Kesling's claim alleges two separate forms of deception. One is civil and the other is quasi-criminal, but both counts allege that it was deceptive to call the car either a "Sporty Car" or a "Great Value," since it was unsafe to drive or otherwise use as expected for an ordinary passenger car. We address her civil claim first, though our analysis of her quasi-criminal claim is similar because we find the issue of "puffing" dispositive of both.

### A. Indiana Deceptive Consumer Sales Act.

Kesling's purely civil claim relies on the Deceptive Consumer Sales Act (DCSA). The DCSA is a remedial statute and "shall be liberally construed and applied to promote its purposes and policies" of protecting consumers from deceptive or unconscionable sales practices. I.C. § 24-5-0.5-1 (2007 Repl.). It is a "deceptive act" for a "supplier" like Hubler to make certain "*representations* as to the subject matter of a consumer transaction"—including, so far as relevant here, that it "has . . . performance, characteristics, . . . uses, or benefits it does not have which the supplier knows or should reasonably know it does not have." I.C. § 24-5-0.5-3(a)(1) (emphasis added). But even when a seller's failure to disclose known problems is sufficiently deceptive to be actionable on grounds such as fraud, it is not actionable as a "deceptive act" because a non-disclosure is not a "representation" of any fact. Lawson v. Hale, 902 N.E.2d 267, 273–74 (Ind. Ct. App. 2009). Here, Kesling argues, and the Court of Appeals majority agreed, that "Sporty Car at a Great Value Price" constituted an implied representation of fact—specifically, that the car was "a good car for the price" and therefore "that, at a minimum, it [was] safe to operate." Kesling, 975 N.E.2d at 374.

Kesling argues that the actionability of *implied* representations of fact under the DCSA is an issue of first impression, while Hubler claims that Berghausen v. Microsoft Corp. is controlling, and excludes implied representations from the ambit of the DCSA. 765 N.E.2d 592 (Ind. Ct. App. 2002), trans. denied. We agree with Kesling that the issue is open, because Berghausen did not address its merits, but essentially found the issue waived for lack of cogent argument. Id. at 598 (stating that the plaintiff "does [not] offer argument explaining why Microsoft's 'implicit repre-

sentations' would fit within the [DCSA] definition of deceptive acts"). Yet this case does not offer an opportunity to address implied representations of fact, as it might if Kesling's claim were based on the ad's representation that the car had cruise control, but the system did not actually work. Instead, we find it dispositive that Hubler's statements were merely "puffing"—statements of unverifiable *opinion*—and not representations of fact at all.

Indeed, by requiring a representation of *fact*, the DCSA looks to the same criterion that distinguishes an actionable warranty from non-actionable "puffing," which makes breach of warranty cases instructive. For example, calling a diesel truck "road ready" is "an express affirmation of fact," exposing the seller to liability when the engine block cracks two weeks later and renders the truck inoperable. Wiseman v. Wolfe's Terre Haute Auto Auction, Inc., 459 N.E.2d 736, 737–38 (Ind. Ct. App. 1984). By contrast, "statements of the seller's *opinion*, not made as a representation of fact"—such as claiming a product "is the best"—are "simply puffing which does not create an express warranty." Martin Rispens & Son v. Hall Farms, Inc., 621 N.E.2d 1078, 1082 (Ind. 1993) (emphasis added), abrogated on other grounds by Hyundai Motor Am., Inc. v. Goodin, 822 N.E.2d 947, 958–59 (Ind. 2005). Put another way, puffery consists of "empty superlatives on which no reasonable person would rely," or "meaningless sales patter," All-Tech Telecom, Inc. v. Amway Corp., 174 F.3d 862, 868 (7th Cir. 1999)—what Learned Hand called the "kind[] of talk which no sensible man takes seriously, and if he does he suffers from his credulity." Vulcan Metals Co. v. Simmons Mfg. Co., 248 F. 853, 856 (2d Cir. 1918).

Rispens involved both puffing and representations of fact, and illustrates the difference between them. There, watermelon seeds were labeled as "top quality seeds with high vitality, vigor[,] and germination." 621 N.E.2d at 1082. But they turned out to be contaminated with bacteria, which caused a blight that ruined that year's crop for the farmer who planted them. *Id.* at 1080–81. The farmer sued the seed grower, arguing that the label's statement created a warranty and that the contamination breached that warranty. Id. at 1081–82. We concluded that "top quality seeds" was "a classic example of puffery" because it "contains no definitive statement as to how the product is warranted or any assertion of fact concerning the product, but is merely the opinion of" the seller. Id. at 1082–83. But "high vitality, vigor[,] and germination" could constitute a warranty, because it was "a promise that the seeds will perform in a certain manner," not merely the seller's opinion. Id. at 1083.

Here, each part of "Sporty Car at a Great Value Price" can reasonably be taken only as puffing, akin to "top quality" in Rispens, and not as a representation of any fact. Whether a car is "sporty" is a subjective assertion of opinion, not fact, commonly applied in advertising to anything from Porsches to pickup trucks. Moreover, much like Judge Friedlander, we believe the term refers to a car's styling or design, not its drivability, Kesling, 975 N.E.2d at 376 (Friedlander, J., dissenting)—who would dispute that an old MG roadster or Ford Mustang is a "sporty car," even if it is totally un-roadworthy and needs complete restoration? "Sporty" (unlike "road ready," Wiseman, 459 N.E.2d at 737–38) simply cannot reasonably be ascribed any significance as a representation of a car's state of repair or drivability. Similarly, "Great Value Price" cannot reasonably be understood to have any greater significance than the comparable terms "great price" or "priced to sell." Reasonable buyers cannot expect a seller to admit their price is "significantly inflated," and therefore cannot take seriously an assurance that the price is a "bargain," "below market," or otherwise a "Great Value." Both terms, whether read together or in isolation from each other, are mere puffery as a matter of law.

Since puffing is merely a statement of *opinion*, Rispens, 621 N.E.2d at 1082–83, it cannot be a representation of *fact*—and thus, cannot be "deceptive" under the DCSA. The trial court correctly entered summary judgment for Hubler on this issue.

**B. Crime Victim's Relief Act Damages for Criminal Deception.**

Kesling's other deception claim is quasi-criminal. She argues that Hubler's ad constitutes criminal deception—"disseminat[ing] to the public an advertisement that the person knows is false, misleading, or deceptive," I.C. § 35-43-5-3(a)(9)—and that she is entitled to treble damages and other civil remedies under the Crime Victim's Relief Act, I.C. § 34-24-3-1, because she has "suffer[ed] a pecuniary loss as a result of a violation of" the criminal deception statute. (An actual criminal conviction is not required for recovery; a claimant "merely must prove each element of the underlying crime by a preponderance of the evidence." Klinker v. First Merchs. Bank, N.A., 964 N.E.2d 190, 193 (Ind. 2012).)

But like the DCSA, the criminal deception statute also depends on a "representation" of some *fact*, by requiring consideration of "not only *representations* contained or suggested in the advertisement . . . , but also the extent to which the advertisement fails to reveal material facts in

the light of the *representations*." I.C. § 35-43-5-3(b) (emphases added). Our "puffing" conclusion therefore carries just as much force here as it does to the DCSA—that because "Sporty Car at a Great Value Price" expresses Hubler's puffed opinion, rather than representing any objective fact, it cannot be a basis for a criminal deception claim. (If anything, that conclusion applies even more strongly here, because unlike the liberal construction given to the DCSA's remedial provisions, criminal statutes are narrowly construed, Meredith v. State, 906 N.E.2d 867, 872 (Ind. 2009)—as is the Crime Victims' Relief Act, which is also "a punitive measure," Klinker, 964 N.E.2d at 195.) The trial court was correct to grant summary judgment to Hubler on this issue as well.

## C. The Harm of Finding "Puffing" Deceptive.

While deceptive advertising is certainly detrimental to the public, treating these "puffing" statements as actionable representations would have undesirable consequences as well. Construing either "Sporty Car" or "Great Value Price" as a representation of fact is at best a double inference—first, taking the ad to "impl[y] that the Eclipse was a good car for the price" (as opposed to simply being inexpensive), and second, inferring from the *first* inference that the car was "thus, at a minimum, safe to operate." Kesling, 975 N.E.2d at 372.

Allowing a deception claim to be based upon such a double inference is problematic under both the civil and criminal statutes. First, we recognize that the DCSA must be liberally construed, but only so far as its purpose of "protect[ing] consumers from *suppliers* who commit deceptive and unconscionable sales acts," I.C. § 24-5-0.5-1(b) (emphasis added). It does not extend to protecting consumers from *themselves*. Yet that is essentially what Kesling seeks—not merely for suppliers to anticipate what consumers might infer from an advertisement *itself* (which, again, is the implied-representation question we reserve for another day), but to further anticipate what consumers might then secondarily infer *from their own inferences*. Such a requirement would exceed the stated purpose of the statute, and demand an unrealistic degree of intuition about consumers' subjective perceptions.

The double-inference concern is an even greater problem under the criminal deception statute. A criminal statute is unconstitutionally vague "if its prohibitions are not clearly defined," or "its terms invite arbitrary or discriminatory enforcement." Klein v. State, 698 N.E.2d 296, 299 (Ind. 1998) (citing Grayned v. City of Rockford, 408 U.S. 104, 108 (1972) and Kolender v. Lawson, 461

8

U.S. 352, 357 (1983)). It is difficult to imagine how an advertiser could "know" an advertisement is deceptive as the statute requires, I.C. § 35-43-5-3(a)(9), if that inquiry requires them to "know" what inference upon inference (and perhaps further inference beyond that, and beyond that again) any given member of the public might draw.

Finally, the Court of Appeals' approach would significantly impede legitimate advertising. The majority observed that "'Sporty Car at a Great Value Price' goes beyond a bare '1996 Mitsubishi Eclipse for $2981," and that if Hubler had "merely listed the vehicle's specifications and features, Kesling likely would not have a viable case." Kesling, 975 N.E.2d at 372, 374. But advertising need not be limited to a product's "name, rank, and serial number" in order to have a safe harbor against civil or criminal liability. Cf. Passmore v. Multi-Mgmt. Servs., Inc., 810 N.E.2d 1022, 1028 (Ind. 2004) (expressing concern that "declaring employers liable for negligence in providing employment references will lead universally to employer reluctance to provide any information other than name, rank, and serial number"). While advertisements may not be deceptive, they need not refrain from any expression of the seller's opinion, either. Hubler's "puffing" simply is not the stuff of a deception claim.

## II. Kesling's Common Law Fraud Claim.

Kesling's common-law fraud claim is based on the salesperson's claim that the car "would just need a tune-up," rather than on Hubler's ad. As a result, her fraud claim fares better than her deception claims. The elements of common-law fraud are "(1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of." Lawyers Title Ins. Corp. v. Pokraka, 595 N.E.2d 244, 249 (Ind. 1992). And unlike deception, "fraud is not limited only to affirmative representations; the failure to disclose all material facts can also constitute actionable fraud." Lawson, 902 N.E.2d at 275. In particular, "[w]hen a buyer makes inquiries about the condition, qualities, or characteristics of property," the seller must "fully declare any and all problems associated with the subject of the inquiry," or else risk liability for fraud. Id. (internal quotation marks omitted) (finding "textbook case of fraud" where seller told buyer that a tractor leaked oil and gas, but claimed to know nothing else about it, when he in fact knew the engine block had cracked and been welded).

9

Those settled principles are enough for Kesling's fraud claim to survive summary judgment. It is undisputed that Kesling asked the salesperson why the car's idle was rough—and while there is some dispute about the precise response, the evidence most favorable to Kesling is that the salesperson told her the car "would just need a tune-up" because "it had been sitting for a while." Regardless of whether that statement was qualified with the word "probably," as some of the evidence suggests, "just need[s] a tune-up" can reasonably be understood as a representation of past or existing fact—as can the supporting claim that the car "had been sitting for awhile." And a jury could reasonably find both claims untrue, because the car needed extensive repair and not just a tune-up, and because the car had been taken on trade just two weeks before and hadn't really "been sitting for awhile."

Similarly, there is evidence to support an inference that the salesperson knew his statements to be false, but made them anyway with intent to deceive Kesling. Hubler admitted that it inspected the car when it accepted it on trade, so the salesperson as Hubler's agent may be inferred to have at least constructive knowledge of the inspection—and of the car's defects, which reportedly would have been obvious to anyone who would have inspected or serviced the car at a dealership. Failing to disclose those defects and instead representing that the car "would just need a tune-up" not only permits an inference of fraudulent intent, but also runs afoul of the related duty to "fully declare any and all problems associated with the subject of" a buyer's inquiry "about the condition, qualities, or characteristics of property." Lawson, 902 N.E.2d at 275.

Finally, the summary judgment record shows a genuine issue of fact as to Kesling's reliance on the salesperson's statements. In her deposition, Kesling stated that she offered less than the asking price for the car because of the statement that the car needed a tune-up—in other words, that she relied on that statement in deciding how much she was willing to pay for the car. To be sure, other evidence implies that she didn't actually rely on the statement—for example, taking the car to have its computer-diagnostic codes read immediately after purchase—but on summary judgment, we may only consider the evidence in the light most favorable to Kesling. Nor is she barred from claiming reliance because of signing an acknowledgement that she was buying the car "AS IS—NO WARRANTY . . . regardless of any oral statements about the vehicle." An as-is provision disclaims implied warranties, but it "provides no insulation from fraudulent misrepresentations." Fimbel v. DeClark, 695 N.E.2d 125, 128 (Ind. Ct. App. 1998), trans. denied; see also Lawson, 902

10

N.E.2d at 274–76 (allowing fraud claim for nondisclosure of cracked engine block to proceed, even though "as-is" disclaimer barred any claim for breaching implied warranty of merchantability).

**Conclusion**

Mere "puffing" is a statement of opinion, not a representation of fact, and thus cannot be the basis of deception or fraud claims. But stating that a car "would just need a tune-up," in the face of actual or constructive knowledge that it had far more serious problems, does represent a fact—and therefore may be the basis of a fraud claim when a seller gives it as a knowingly incomplete answer to a buyer's specific question. Accordingly, we affirm the trial court's grant of summary judgment in favor of Hubler as to Kesling's Deceptive Consumer Sales Act and Crime Victim's Relief Act claims; reverse its grant of summary judgment as to Kesling's fraud claim; and remand to the trial court for further proceedings not inconsistent with this opinion.

Dickson, C.J., and Rucker, David, and Massa, JJ., concur.

11