

IN THE

# Court of Appeals of Indiana

Eric Vonderheide,

*Appellant-Respondent*

v.

Carrie Weisman-Vonderheide,

*Appellee-Petitioner*



FILED

Mar 26 2026, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

March 26, 2026

Court of Appeals Case No.
25A-DC-1943

Appeal from the Dubois Superior Court

The Honorable Anthony D. Quinn, Judge

Trial Court Cause No.
19D01-1710-DC-607

---

**Opinion by Judge Mathias**
Judge Pyle concurs.
Judge Vaidik dissents with a separate opinion.

**Mathias, Judge.**

[1] Indiana Appellate Rule 14(A)(1) permits interlocutory appeals as a matter of right over orders for "the payment of money." The exact parameters of such orders have caused confusion among practitioners and panels of our Court alike. We therefore clarify that, to secure appellate jurisdiction under Rule 14(A)(1), what matters is less about the specific wording of the order and more about what the order does: if the order demands a party to surrender money without determining the entire controversy, a party may seek interlocutory review of that order under Rule 14(A)(1). As the order in this appeal simply identifies a debt one party owes to the other and does not demand that the debtor pay that debt prior to the entry of final judgment, we dismiss this appeal without prejudice.

## Facts and Procedural History

[2] Husband and Wife married in 1996 and have three children. When Wife filed a petition for dissolution of the marriage in 2017, Husband was still actively employed with the United States Army. Prior to the final hearing, the parties entered into a settlement agreement, which provided in relevant part that Wife would receive "1/2 of [Husband's] U.S. Army retirement pension upon the time of his taking of such benefit." Appellant's App. Vol. 2, p. 18. The trial court adopted the settlement agreement and incorporated it into the final decree, which the court issued in January 2020.

In June 2023, Husband retired from the Army. Wife had attempted to file the necessary paperwork with the Defense Finance Accounting Service ("DFAS") to set up direct payments of one-half of Husband's retirement benefits directly to her, to no avail. And Husband refused to pay Wife one-half of the payments he received.

Accordingly, Wife sought to enforce the parties' settlement agreement and to hold Husband in contempt. Specifically, Wife filed a "Motion to Enforce Order on Dissolution Agreement and Rule to Show Cause." Appellee's App. Vol. 2, p. 2 (some capitalization removed). The trial court bifurcated its consideration of Wife's motion. Appellant's App. Vol. 2, p. 10. Thus, following an initial hearing, the trial court found that, "beginning in June 2023, [Wife] should have received monthly benefits from [Husband's] retirement pension in the amount of $1,619.50. As of 7/1/25, [Husband] is in arrears in the amount of $40,487.50." *Id.* at 14 ("the Arrearage Order"). The court then set a future hearing date, which has yet to be held, to discern if Husband should be held in contempt, apparently for his nonpayment of the arrearage.

This appeal ensued.

## Discussion and Decision

As three Justices of our Supreme Court have recently reminded us, we have a continuing obligation to determine, *sua sponte* if necessary, whether the parties before us have properly secured our jurisdiction. *See Allen v. Anonymous Physician*, ___ N.E.3d ___, 2026 WL 504121, at *1 (Slaughter, J., reluctantly

concurring in the denial of transfer "despite the lack of jurisdiction" under our Appellate Rules); *id.* at \*6-7 (Molter, J., concurring in the denial of transfer, with Rush, C.J., joining, noting that "it appears" the appeal was without "appellate jurisdiction"). We are obliged to do so in this case.

[7] Our Supreme Court has explained:

> Absent certain exceptions, the Court of Appeals may exercise jurisdiction only over final judgments and certain interlocutory orders. *Chitwood v. Guadagnoli*, 230 N.E.3d 932, 939 n.4 (Ind. Ct. App. 2024) (citing App. R. 5). A final appealable order is one that disposes of "all issues as to all parties, ending the particular case and leaving nothing for future determination." *Ramsey v. Moore*, 959 N.E.2d 246, 251 (Ind. 2012). An "interlocutory order," by contrast, refers to a judgment "made before a final hearing on the merits" and which "requires something to be done or observed but does not determine the entire controversy." *Bacon v. Bacon*, 877 N.E.2d 801, 804 (Ind. Ct. App. 2007), *trans. denied*. A party may appeal certain interlocutory orders (e.g., for the payment of money) as a matter of right. App. R. 14(A). All other interlocutory orders require trial-court certification to authorize the appeal and acceptance by the Court of Appeals. App. R. 14(B). However, even "non-appealable interlocutory rulings merge into the final judgment and are subject to appellate review through an appeal from the final judgment." *Matter of Adoption of A.E.*, 191 N.E.3d 952, 956 (Ind. Ct. App. 2022), *trans. denied*.

*O'Connell v. Clay*, 267 N.E.3d 994, 999-1000 (Ind. 2025).

[8] In his notice of appeal, Husband alleged that the Arrearage Order was a final judgment. It was not. Wife filed a singular motion to enforce the dissolution agreement and to show cause against Husband. The trial court bifurcated its

consideration of Wife's motion. In particular, the court first held an evidentiary hearing to determine if Husband owed an arrearage to Wife under the dissolution agreement. That hearing resulted in the Arrearage Order. The court then set a separate hearing, which has yet to be held, to determine if Husband should be held in contempt for the arrearage. Thus, the component of Wife's motion in which she requested to hold Husband in contempt remains pending in the trial court, and Husband's statement in his notice of appeal that he is appealing from a final judgment is incorrect.[1]

[9]    We thus turn to whether the Arrearage Order might be an appealable interlocutory order. The shift away from a final judgment to an interlocutory order is significant. As we have explained:

> Our scope of review in interlocutory appeals is limited to the interlocutory order on appeal. As our Supreme Court has said, "an interlocutory appeal raises every issue presented *by the order* that is the subject of the appeal." *Tom-Wat, Inc. v. Fink*, 741 N.E.2d 343, 346 (Ind. 2001) (emphasis added). Such appeals are not vehicles through which one may attack the trial court

---

[1] The dissent emphasizes that the Arrearage Order also ordered the parties to pay their own attorneys' fees, and the dissent concludes that no issues remain pending before the trial court because, by implication from its order on the fees, the trial court must have found Husband to not be in contempt. However, the Arrearage Order itself does not dispose of the still-pending contempt issue; to the contrary, the order expressly sets the Show Cause hearing for a future, and still-pending, date. We accept the trial court's chosen language at face value rather than imply that the bifurcated future hearing date must be for some reason other than to consider the merits of Wife's Show Cause request. Moreover, even if we thought this case to be a close call under Appellate Rule 14(A)(1), we would still conclude dismissal without prejudice to be the most prudent course given the requirement that we strictly apply our jurisdictional exceptions to trial court finality. Our *sua sponte* consideration of whether we have jurisdiction is far from "unnecessary"; it is required by established precedent of our Supreme Court. *See, e.g., Allen*, ___ N.E.3d at ___ (Slaughter, J., and Molter, J., with Rush, C.J., joining, writing separately with respect to the denial of transfer).

proceedings as a whole and without regard to the order on appeal. *See id.*

*DuSablon v. Jackson Cnty. Bank*, 132 N.E.3d 69, 76 (Ind. Ct. App. 2019), *trans. denied*. Thus, our consideration of our possible jurisdiction over the Arrearage Order is limited to the face of the order itself. *See id.*

[10] There is no question that Husband has not secured our jurisdiction under Indiana Appellate Rule 14(B). We therefore consider whether the Arrearage Order might be appealable as a matter of right under Rule 14(A). Appellate Rule 14(A) provides:

> Appeals from the following interlocutory orders are taken as a matter of right by filing a Notice of Appeal with the Clerk within thirty (30) days after the notation of the interlocutory order in the Chronological Case Summary:
>
> (1) For the payment of money;
>
> (2) To compel the execution of any document;
>
> (3) To compel the delivery or assignment of any securities, evidence of debt, documents or things in action;
>
> (4) For the sale or delivery of the possession of real property;
>
> (5) Granting or refusing to grant, dissolving, or refusing to dissolve a preliminary injunction;
>
> (6) Appointing or refusing to appoint a receiver, or revoking or refusing to revoke the appointment of a receiver;

(7) For a writ of habeas corpus not otherwise authorized to be taken directly to the Supreme Court;

(8) Transferring or refusing to transfer a case under Trial Rule 75; and

(9) Issued by an Administrative Agency that by statute is expressly required to be appealed as a mandatory interlocutory appeal.

[11] As we have long recognized, Appellate Rule 14(A) is an extraordinary and limited exception to the general rule that requires complete finality in the trial court in order to secure appellate jurisdiction. *See Allstate Ins. Co. v. Scroghan*, 801 N.E.2d 191, 193 (Ind. Ct. App. 2004) (citation omitted), *trans. denied*. As an exception to our general rule of jurisdiction, our authority to hear interlocutory appeals under Rule 14(A) is to be "strictly construed, and any attempt to perfect an appeal without such authorization warrants a dismissal." *Id.*

[12] Judge Vaidik's opinion for a unanimous panel of our Court in *Scroghan* is a helpful example of how to understand Rule 14(A). As she explained:

> Because [the appellant] will be forced to expend money to comply [with the order on appeal], it claims that the order actually is one for the payment of money [under Rule 14(A)(1)]. We disagree. If we were to accept [that] argument, then any . . . order which would require a party to expend money for compliance—basically, all orders—would qualify for an interlocutory appeal as of right. This could not have been the intent of the rule.

[The appellant] also claims that it may appeal as a matter of right under Rule 14(A)(3) because the trial court's order compels the delivery of documents [in discovery]. This is a misreading of the rule. Rule 14(A)(3) pertains to the delivery of documents where "'delivery imports a surrender.'" *Cua v. Morrison*, 600 N.E.2d 951, 955 (Ind. Ct. App. 1992) (Sullivan, J. concurring) (quoting *W. Union Tel. Co. v. Locke*, 107 Ind. 9, 7 N.E. 579, 582 (1886)), *trans. denied*. Surrender may occur with such items as securities, receipts, deeds, leases, or promissory notes. *See, e.g.*, *Koch v. James*, 616 N.E.2d 759, 760-61 (Ind. Ct. App. 1993) (delivery of stocks), *reh'g denied, trans. denied*; *see also W. Union Tel.*, 7 N.E. at 582. "'It is easy to see that the administration of justice might be seriously embarrassed, and vexatious delays secured, if appeals could be taken in every case where a written instrument is ordered to be produced for use as evidence on the trial of the cause.'" *Cua*, 600 N.E.2d at 953 (quoting *W. Union Tel.*, 7 N.E. at 582). Thus, in order to seek an interlocutory appeal as of right for the delivery of a document under Rule 14(A)(3), we find that the delivery of the document *must import a surrender* of the document. Such is not the case here, where the documents sought by [the appellee] in discovery are a means to prosecuting the litigation. . . .

*Id.* at 194 (emphasis added). In other words, Rule 14(A), as its list of applicable circumstances demonstrates, enables interlocutory review as a matter of right where the order, if erroneous and left undisturbed, would work an affirmative and substantial harm on the appealing party if appellate review were to wait until the entry of final judgment. *See id.*

[13] Of the various provisions under Rule 14(A), the only possibly applicable provision here is that the Arrearage Order is an order for the payment of money under Rule 14(A)(1). In *State v. Hogan*, our Supreme Court stated that an

interlocutory appeal for the "payment of money" means "trial court orders *which carry financial and legal consequences akin to those more typically found in final judgments.*" 582 N.E.2d 824, 825 (Ind. 1991) (emphasis added). Thus, in *Mosser v. Mosser*, Judge Najam explained:

> A provisional order for the payment of attorney's fees is not a money judgment. A provisional order is made before the final hearing on the merits. A final money judgment, on the other hand, represents the ultimate determination of the court on the matter.
>
> A money judgment is entered on the judgment docket and constitutes a lien on the judgment debtor's property. For a money judgment to constitute a lien, it must ordinarily be a final judgment for the payment of a definite and certain amount of money. . . . *A provisional order for the payment of money is unliquidated and unenforceable by execution*. Stated otherwise, a provisional order for the payment of attorney's fees is *in fieri* and neither a debt . . . nor a money judgment.

729 N.E.2d 197, 200-01 (Ind. Ct. App. 2000) (emphasis added; citations and footnote omitted); *see also Scroghan*, 801 N.E.2d at 194 (recognizing that interlocutory orders that simply carry financial consequences are insufficient to invoke our jurisdiction under Rule 14(A)(1)).

[14] One example of an interlocutory order for the payment of money is an order that requires a party to deposit a bond with the trial court clerk. In *Ferguson v. Estate of Ferguson*, we had "little trouble concluding" that such an order "carrie[d] legal and financial consequences akin to a final judgment," as the bond order required one of the parties to be "compelled to part with money"

pending litigation, even if that party might eventually get some or all of that money back. 40 N.E.3d 881, 885 (Ind. Ct. App. 2015). Another example of an interlocutory order for the payment of money is a provisional child support order. *Lamon v. Lamon*, 611 N.E.2d 154, 155 n.1 (Ind. Ct. App. 1993) (stating that our jurisdiction over a provisional child support order was secured under the predecessor to Appellate Rule 14(A)(1)). Such orders typically continue until finalized into liquid obligations in a final decree of dissolution. *See, e.g.*, *Mosser*, 729 N.E.2d at 200-01.

[15] In 2010, a panel of our Court held that an interlocutory order did *not* meet the requirements of Rule 14(A)(1) because the order "did not require [the appellant] to pay a specific amount at a specific time . . . ." *Huber v. Montgomery Cnty. Sheriff*, 940 N.E.2d 1182, 1184-85 (Ind. Ct. App. 2010). Later, another panel of our Court held that our jurisdiction under Rule 14(A)(1) *was* secured by an order that required the appellant "to pay a specific sum of money by a date certain." *DuSablon*, 132 N.E.3d at 76.[2] But *Huber* and *DuSablon* do not say the same thing. *Huber* says certain language is required to secure our jurisdiction; *DuSablon* says certain language is sufficient.

[16] That distinction has created a lack of clarity. In particular, in *Gerth v. Estate of Bloemer*, a panel of our Court distinguished *DuSablon* and concluded that Rule 14(A)(1) "contains no 'date certain' requirement." 240 N.E.3d 702, 706 n.1

---

[2] The *DuSablon* panel nonetheless dismissed the appeal as the appellant's arguments did not pertain to the order for the payment of money. 132 N.E.3d at 76.

(Ind. Ct. App. 2024), *trans. not sought*. The *Gerth* panel did not mention *Huber*, and it then concluded that, because the order on appeal carried financial consequences, it was properly before us under Rule 14(A)(1). *Id.* at 705-06.

[17] We decline to follow the foggy road of *Huber* and *Gerth*. We conclude that no magic language is required under Rule 14(A)(1) to secure our jurisdiction, and insofar as *Huber* suggests otherwise, we disagree. However, we also conclude that, *Gerth* aside, our case law is best understood as requiring more than financial consequences to secure our jurisdiction under Rule 14(A)(1). To secure our jurisdiction under that rule, the interlocutory order must import a surrender of money akin to a final judgment, and that surrender must be at a time prior to the entry of final judgment to justify our prompt review. *See Scroghan*, 801 N.E.2d at 194; *see also Hogan*, 582 N.E.2d at 825; *Mosser*, 729 N.E.2d at 200-01.

[18] The Arrearage Order here causes no such surrender by Husband to Wife. The order simply identifies a debt that Husband owes to Wife both with respect to monthly accruals and total arrearage. The order on its face does not demand Husband begin any payments to Wife prior to finality of the trial court proceedings, although Husband perhaps has done so for his own reasons. Finally, we remind judges and attorneys that Appellate Rule 14(B) permits *discretionary* interlocutory appeals and requires both permission from the trial court *and* approval of the Court of Appeals, a rather rare combination of events. Accordingly, and strictly applying the jurisdictional exception of Rule 14(A)(1), we conclude that this appeal should be dismissed.

Dismissed without prejudice.


Pyle, J., concurs.
Vaidik, J., dissents with a separate opinion.


ATTORNEY FOR APPELLANT

John E. Birk
Huntingburg, Indiana


ATTORNEY FOR APPELLEE

Patrick J. Smith
Smith Law Office
Bedford, Indiana

**Vaidik, Judge, dissenting.**

I respectfully dissent. I disagree with the majority's threshold conclusion that the order being appealed was interlocutory rather than final.

The original Order on Dissolution Agreement provided that Wife would receive half of Husband's Army pension. The order didn't specify how Wife was to receive those funds, but when Husband retired in June 2023, Wife initially tried to get the Department of Defense to pay her directly. When that failed, and Husband failed to pay on his own, Wife filed a combined "Motion to Enforce Order on Dissolution Agreement and Rule to Show Cause." Appellee's App. Vol. 2 pp. 2-4. She asked the trial court to order Husband to (1) pay the amount contemplated by the Order on Dissolution Agreement (including a large arrearage) and (2) pay the attorney's fees Wife incurred in bringing the motion to enforce. The trial court held a hearing on the motion and then, on July 15, 2025, ruled as follows:

> Pursuant to the original agreement and beginning in June 2023, [Wife] should have received monthly benefits from [Husband's] retirement pension in the amount of $1,619.50. As of 7/1/25, [Husband] is in arrears in the amount of $40,487.50. The Court finds that both parties are to be held responsible for their own attorney fees. Furthermore, the Court now sets this matter for a Show Cause hearing on 11/21/2025 at 1:00 p.m.

Appellant's App. Vol. 2 p. 14.

Husband appealed, but the majority now dismisses his appeal. My colleagues conclude that the trial court "bifurcated its consideration of Wife's motion,"

that it has ruled on the "Motion to Enforce" part of the motion but not the "Rule to Show Cause" part of the motion, and that as a result there is no final judgment. Slip op. ¶¶ 4, 8. That's not how I read the order. The trial court had two issues before it. First, when the Department of Defense failed to pay Wife directly, was Husband required to pay Wife her share? And second, if Husband was required to pay Wife her share, should he be held in contempt and ordered to pay Wife's attorney's fees? In its order, the court ruled on both questions. On the first, the court held that Wife should have been receiving $1,619.50 per month since June 2023 and that Husband is $40,487.50 in arrears. On the second, the court held that Wife was responsible for her own attorney's fees, i.e., that Husband wasn't in contempt for failing to pay Wife her share of the pension. This split ruling can be explained by the fact that the original Order on Dissolution Agreement didn't expressly require Husband to pay Wife her share, and all involved seemed to agree that Wife needed to work with the Department of Defense to get her share. In other words, while the trial court concluded that Husband should have paid Wife when the Department of Defense didn't, it apparently believed that his noncompliance didn't rise to the level of contempt of court.

[23] The majority, without acknowledging the denial of Wife's request for attorney's fees, holds that the trial court hasn't decided whether Husband was in contempt. But if that were true, the court wouldn't have denied Wife's request for attorney's fees. After all, the only relief Wife sought in the "Rule to Show

Cause" part of her motion was an award of the attorney's fees she incurred in bringing the motion.

[24] So why did the trial court schedule a future "Show Cause hearing"? The order doesn't make that clear, but presumably the court set the hearing as a placeholder to check in on Husband's compliance with its new enforcement order. That would explain why the court set the hearing more than four months out rather than finding an earlier date.

[25] Wife must agree, because she doesn't argue that the trial court's order wasn't final or that we lack jurisdiction or that the appeal should be dismissed. The majority is correct that we must ensure our own jurisdiction even if the parties don't raise the issue. But here, the majority looks for a jurisdictional problem that doesn't exist. And having done so, it embarks on an unnecessary examination of interlocutory appeals under Appellate Rule 14(A)(1)—a topic that hasn't been briefed by the parties. For the reasons stated above, I would find that we have final-judgment jurisdiction under Appellate Rule 5(A), and I would address the merits of Husband's appeal.