Michael SIEGEL, Appellant–Defendant,

v.

Marjorie WILLIAMS and Charles
Williams, Appellees–
Plaintiffs.

No. 49A02–0405–CV–444.

Court of Appeals of Indiana.

Nov. 30, 2004.

David W. Stone, IV, Stone Law Office & Legal Research, Anderson, IN, Attorney for Appellant.

Steven K. Huffer, Huffer & Weathers, P.C., Indianapolis, IN, Attorney for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Michael Siegel ("Siegel") appeals from the trial court's judgment in favor of Appellees–Plaintiffs Marjorie Williams ("Marjorie") and Charles Williams (collectively "the Williamses"). We affirm.

### Issues

Siegel raises three issues, which we consolidate and restate as:

I. Whether the trial court had jurisdiction over the Williamses' fraud complaint; and

II. Whether the trial court's findings of fact are clearly erroneous.

### Facts and Procedural History

On April 28, 1988, Marjorie was caring for her daughter at Wishard Memorial Hospital in Indianapolis, Indiana. Marjorie's daughter had been diagnosed with AIDS caused by a blood transfusion in the early 1980s. In the early morning hours, Marjorie was assisting her daughter when she was stuck by a hypodermic needle hidden in her daughter's bed. Apparently, a Wishard employee had failed to dispose of the needle after taking a blood sample. Marjorie suffered emotional trauma as a result of her fear of contracting AIDS, and sought counsel from Siegel, an attorney licensed to practice law in Indiana,[1] to file a negligence claim against Wishard. Siegel failed to file a notice of tort claim within 180 days of April 28, 1988, which was a statutory prerequisite for maintaining an action against Wishard.[2] Marjorie ultimately entered into a settlement agreement with the hospital for $5,000.00.

The Williamses hired different counsel to pursue an attorney malpractice action against Siegel. On November 13, 1992, the second day of trial, Siegel told Marjorie's counsel that he would settle the claim for $25,000, which was all that he had because his wife had gotten all of his money in their divorce. He also stated that if the jury awarded more than $25,000, he would declare bankruptcy. At the time

---

1. Siegel's license to practice law was subsequently suspended for intentionally deceiving a tribunal in an unrelated matter. *In re Siegel,* 708 N.E.2d 869 (Ind.1999).

2. *See* Ind.Code § 34–4–16.5–7 (recodified at Ind.Code § 34–13–3–8).

Siegel made these statements, he had filed an appearance in the case and was an attorney of record before the court. Based upon Siegel's statements, the Williamses agreed to settle their claim. The Hendricks County trial court noted the settlement, and the Williamses filed a satisfaction and release of judgment on April 14, 1993.

Approximately two years later, Scott Weathers, Marjorie's attorney in the attorney malpractice action, encountered Siegel outside of the Marion County court building. Siegel told Weathers that he "pulled one over on [the Williamses]" because he could have paid a judgment of "three hundred, four hundred, five hundred thousand dollars, and I got out of it for twenty-five." Tr. at 92.

On October 28, 1998, the Williamses filed a second complaint against Siegel in Marion County, alleging fraud and misrepresentation which induced the Williamses to settle the attorney malpractice claim. Siegel filed a motion to dismiss for lack of jurisdiction, arguing that the complaint was actually a Trial Rule 60 motion to set aside the prior judgment entered by the Hendricks County trial court. The trial court denied the motion. On November 24, 2003, the trial court conducted a bench trial. Mary Findling, an Indianapolis attorney with seventeen years of experience, testified that, in her opinion, the Williamses' claim against Wishard would have been worth between $100,000 and $150,000. The trial court made special findings, and entered judgment against Siegel for $100,000, and reduced this award by $30,000 to account for the prior settlements. This appeal ensued.

## Discussion and Decision

### I. Jurisdiction

#### A. Standard of Review

■ In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider the complaint, motion and any affidavits or evidence submitted in support. *GKN Co. v. Magness,* 744 N.E.2d 397, 400 (Ind.2001). The standard of review for Trial Rule 12(B)(1) motions to dismiss is a function of what occurred in the trial court. *Id.* at 401. If the facts before the trial court are not in dispute, the question of subject matter jurisdiction is purely one of law, and this Court owes no deference to the trial court's determination. *Id.* The ruling on a motion to dismiss where the facts are not disputed or where the facts are disputed and the court rules on a paper record following a hearing and argument of counsel will be reviewed de novo. *Id.*

#### B. Analysis

■ Siegel argues that the Marion County trial court lacked jurisdiction to hear this case because the Williamses' complaint constitutes an impermissible collateral attack on the Hendricks County judgment in violation of Indiana Trial Rule 60(B).

Indiana Trial Rule 60 provides, in pertinent part:

Rule 60. Relief from judgment or order

\* \* \* \* \*

(B) Mistake—Excusable neglect-Newly discovered evidence-Fraud, etc. On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons:

\* \* \* \* \*

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrep-

resentation, or other misconduct of an adverse party;

\* \* \* \* \*

The motion shall be filed within a reasonable time for reasons (5), (6), (7), and (8), and not more than one year after the judgment, order or proceeding was entered or taken for reasons (1), (2), (3), and (4). A movant filing a motion for reasons (1), (2), (3), (4), and (8) must allege a meritorious claim or defense. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or for fraud upon the court.

The Williamses argue that their complaint is not an attack on the Hendricks County settlement, but is instead an action for fraudulent inducement to settle a lawsuit. Siegel counters that regardless of whether the Williamses' complaint is an independent action for fraud or an attack on the judgment, the Marion County court did not have jurisdiction over the complaint. Siegel notes that this Court held that an independent action under Trial Rule 60(B) to set aside a judgment must be filed in the court that issued the original judgment or order. *Kiskowski v. O'Hara,* 622 N.E.2d 991, 993 (Ind.Ct.App. 1993), *reh'g denied, trans. denied.*

■ The settlement agreement entered by the parties before the Hendricks County court is in actuality an agreed judgment. There has been much debate over the years of whether an agreed judgment is contractual in nature or a judicial act. *See Hanover Logansport, Inc. v. Robert C. Anderson, Inc.,* 512 N.E.2d 465, 470 (Ind.Ct.App.1987); *State ex rel. Prosser v. Ind. Waste Sys., Inc.,* 603 N.E.2d 181, 186 (Ind.Ct.App.1992). Nevertheless, Indiana law and precedent repeatedly provide that agreed judgments do " 'not represent the judgment of the court. The court merely performs the ministerial duty of recording the agreement of the parties.' " *Prosser,* 603 N.E.2d at 186 (quoting *State v. Huebner,* 230 Ind. 461, 104 N.E.2d 385, 387–88 (1952)). Accordingly, Trial Rule 60(B) "is inapplicable to the modification of a pre-existing agreed judgment agreed to by the parties to that judgment." *Id.*

■ Regardless, rather than an action to set aside the prior agreed judgment, we view the Williamses' complaint as they do, an action for fraud in the inducement of the settlement agreement. In such cases, the party bringing the action has an election of remedies: "he may stand upon the contract and seek damages, or rescind the contract, return any benefits he may have received, and seek a return to the status quo ante." *A.G. Edwards and Sons, Inc. v. Hilligoss,* 597 N.E.2d 1, 3 (Ind.Ct.App. 1991); *see also Farm Bureau Mut. Ins. Co. of Ind. v. Seal,* 134 Ind.App. 269, 179 N.E.2d 760, 763–64 (1962) (quoting *Automobile Underwriters v. Rich,* 222 Ind. 384, 53 N.E.2d 775, 777 (1944) ("He can keep what he has received and file suit against the ones perpetrating the fraud and recover such amounts as will make the settlement an honest one.")).

■ Marion County Superior Courts, as courts of general jurisdiction, have subject-matter jurisdiction over complaints for fraud. *See* Ind.Code § 33–5.1–2–4. Thus, the question becomes one of venue, not jurisdiction. The venue statutes and rules do not confer jurisdiction but rather prescribe the location at which trial proceedings are to occur from among the courts empowered to exercise jurisdiction. *Benham v. State,* 637 N.E.2d 133, 137 (Ind. 1994). Indiana Trial Rules 75 and 76 set forth the requirements for determining preferred venue and changing venue, re-

spectively. Siegel presents no argument that venue is inappropriate, and our review of the record reveals that Marjorie resides in Marion County, and that Siegel's law office was located in Marion County, two factors that suggest preferred venue lies in Marion County.

The Marion County trial court has subject-matter jurisdiction over Williamses' complaint, and Marion County appears to be a county of preferred venue. Accordingly, the trial court properly denied Siegel's motion to dismiss for lack of jurisdiction.

## II. Judgment on Fraud

### A. Standard of Review

When a party has requested specific findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A), the reviewing court may affirm the judgment on any legal theory supported by the findings. *Mitchell v. Mitchell*, 695 N.E.2d 920, 923 (Ind.1998). In addition, before affirming on a legal theory supported by the findings but not espoused by the trial court, the reviewing court should be confident that its affirmance is consistent with all of the trial court's findings of fact and inferences drawn from the findings. *Id.* In reviewing the judgment, we must determine first, whether the evidence supports the findings and second, whether the findings support the judgment. *Ahuja v. Lynco Ltd. Med. Research*, 675 N.E.2d 704, 707 (Ind.Ct.App.1996), *trans. denied.* The judgment will be reversed only when clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

A judgment is clearly erroneous if our examination of the record leaves us with the firm conviction that a mistake has been made. *Owensby v. Lepper*, 666 N.E.2d 1251, 1256 (Ind.Ct.App.1996), *reh'g denied.*

### B. Analysis

Siegel argues that the trial court erred in finding fraud, because the Williamses could not rely upon Siegel's future promise to declare bankruptcy. Siegel also argues that the findings do not support the award of damages. We address each issue in turn.

### 1. Material Misrepresentation

The essential elements of fraudulent inducement into a settlement are no different from any action on fraud. *Farm Bureau*, 134 Ind.App. 269, 179 N.E.2d at 763. The elements of actual fraud are: (1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of falsity; (3) which caused the claimant to rely upon the misrepresentation to the claimant's detriment. *Jackson v. Blanchard*, 601 N.E.2d 411, 418 (Ind.Ct.App. 1992). Thus, actual fraud may not be predicated upon representations of future conduct. *Maynard v. 84 Lumber Co.*, 657 N.E.2d 406, 409 (Ind.Ct.App.1995), *trans. denied.*

However, it is well settled that while an oral promise as to future conduct will not support an ordinary fraud action, such promise may form the basis of a constructive fraud action if it induces one to place himself in a worse position than he would have been in had no promise been made and if the party making the promise derives a benefit as a result of the promise. *Farrington v. Allsop*, 670 N.E.2d 106, 109 (Ind.Ct.App.1996). The elements of constructive fraud are:

(1) a duty owing by the party to be charged to the complaining party due to their relationship;

(2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists;

(3) reliance thereon by the complaining party;

(4) injury to the complaining party as a proximate result thereof; and

(5) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Nestor v. Kapetanovic,* 573 N.E.2d 457, 458 (Ind.Ct.App.1991).

 We note that Siegel made two representations to Williamses' attorneys. First, Siegel "basically indicated that anything above $20,000 or $25,000 he couldn't pay. He didn't have the money, he didn't have the wherewithal to pay anything above that amount—the $20,000 to $25,000 amount." Tr. at 91. Siegel also said, "If you get any more than that, I'm going to file bankruptcy anyway, so you might as well take what you can get, because if you get any more, I'm going to file bankruptcy and you'll get nothing." Tr. at 86.

This evidence supports the trial court's findings on this issue. The trial court specifically found, "In order to induce Williams to settle her claim against him, Siegel represented to Williams, through her attorneys, during the trial of the Hendricks Case, that his net worth or financial resources did not permit him to pay any more than Twenty Five Thousand Dollars ($25,000.00) and that he would file a bankruptcy proceeding to discharge any verdict in excess of that sum." App. at 100–101. The trial court further found Siegel's representations to be false, as he had assets to pay a judgment in excess of $300,000. Because Siegel's representation as to his present inability to pay more than a $25,000 judgment was false, the trial court properly concluded Siegel's conduct constituted actual fraud. *See Fire Ins. Exchange v. Bell,* 643 N.E.2d 310 (Ind.1994) (misrepresentation of policy limits was actionable fraud). Further, because Siegel was an attorney of record, Williamses' attorneys had "a right to rely upon any material misrepresentations that may have been made by opposing counsel ... as a matter of law." *Id.* at 313. Siegel's false threat to file for bankruptcy if the jury returned a verdict awarding the Williamses more than $25,000 formed the basis for constructive fraud. The Williamses' reliance on Siegel's threat benefited Siegel, as he was able to reduce his exposure to damages for his malpractice, and placed the Williamses in a worse position, as the estimated value of a jury verdict ranged from $100,000 to $150,000. Accordingly, the trial court's conclusion that Siegel's statements constituted a material misrepresentation is not clearly erroneous.

### 2. Damages

 Siegel argues that the trial court's award of damages was based upon inadequate findings. Siegel contends that because his expert gave an opinion on the value of Williamses' claim that was significantly lower than that of the Williamses' expert, the trial court was required to explain why it gave more weight to the Williamses' expert.

We view Siegel's argument as an invitation to reweigh the evidence and assess witness credibility. This we may not do. As stated above, special findings of fact are sufficient if the evidence supports the finding. Siegel did not object to Findling's qualifications to provide an expert opinion, and Siegel made no objection to Findling's opinion as to the value of the Williamses'

claim against Wishard. Accordingly, the trial court's finding was supported by the evidence, and was not clearly erroneous.

### III. Conclusion

Based upon the foregoing, the trial court had jurisdiction over the Williamses' fraud complaint, and the evidence supported its findings. Accordingly, we affirm the judgment of the trial court.

Affirmed.

SHARPNACK, J., and MAY, J., concur.