**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 27 2014, 9:34 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**PETER H. DRUMM**
Benadum, Cecil & Drumm
Muncie, Indiana

ATTORNEYS FOR APPELLEES:

**THOMAS R. MALAPIT, JR.**
**DAVID J. KARNES**
**MICHAEL G. FOLEY**
Dennis, Wenger, & Abrell, P.C.
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RAPKIN GROUP, INC., as a minority Member on behalf and for the benefit of THE EYE CENTER GROUP, LLC and SURGICENTER GROUP, LLC. | ) ) ) ) ) | |
| Appellants-Plaintiffs, | ) ) | |
| vs. | ) ) | No. 18A02-1302-CT-193 |
| L. MARSHALL ROCH, M.D. and LYNNETTE M. WATKINS, M.D., | ) ) ) | |
| Appellees-Defendants. | ) | |

**APPEAL FROM THE DELAWARE CIRCUIT COURT**
The Honorable Thomas A. Cannon, Jr., Judge
Cause No. 18C05-1007-CT-009

**February 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

Rapkin Group, INC. ("Rapkin"), as a minority member of The Eye Center Group, LLC and Surgicenter Group, LLC (collectively, "ECG/SCG"), appeals the trial court's grant of summary judgment in favor of L. Marshall Roch, M.D. ("Dr. Roch") and Lynette M. Watkins M.D. ("Dr. Watkins") in Rapkin's claim for actual fraud, constructive fraud, and breach of fiduciary duty.

We affirm.

## ISSUE

Whether the trial court properly granted summary judgment in favor of Dr. Roch and Dr. Watkins.

## FACTS

ECG/SCG are closely held, limited liability companies incorporated in April of 1994.[1] Cardinal Health Partners ("Cardinal Health") owned 21.93% of ECG and 33.07% of SCG. The balance of the shares between the two companies were owned by ophthalmologists and optometrists, including Rapkin, whose principal member is Dr. Jeffrey Rapkin ("Dr. Rapkin"). Dr. Roch was chief executive officer of ECG/SCG from its founding in 1994 until July 31, 1999. ECG/SCG had two long time employees: D. Frank Winecock ("Winecock"), who held the positions of assistant administrator and director of finance before being promoted to chief executive officer, and Stephanie Carrick ("Carrick"), who held many positions with ECG/SCG culminating with her appointment as the company's chief financial officer. Dr. Watkins joined ECG/SCG in

---

[1] Though the companies have separate names and operating agreements, both appear to be managed as one company.

2004 and was invited to become an owner and a member of the board of directors in December of 2005.

Around July of 2007, some of the ophthalmologists and optometrists voiced a desire to share in more of the companies' profits because of the amount of work they were doing. Hoping to improve relations within the company, Cardinal Health sold some of its shares to the ophthalmologists and optometrists. Rapkin purchased additional shares at this time. Dr. Roch did not sell any of his shares to the ophthalmologists and optometrists nor did he purchase any shares offered by Cardinal Health.

Blue and Co., LLC ("Blue") performed yearly audits of ECG/SCG's finances. The usual practice was for Blue to present its findings to Winecock and Carrick. Winecock and Carrick would then report those findings to the board of directors. In 2007, Blue submitted the 2006 financial report after April 15th, causing some physicians to file extensions for their tax returns. Though the reports were submitted late, Winecock and Carrick mentioned no problems when presenting the report to the board of directors.

ECG/SCG hired a new auditing firm in 2008; Katz, Sapper & Miller ("KSM"). On March 14, 2008, KSM submitted a partial financial report for 2007. This was due in part to ECG/SCG converting their accounting methods. After the board received the completed report, Dr. Watkins reviewed it with her husband and noticed some inconsistencies. Because of those inconsistencies, Dr. Watkins sent an email to Winecock and Carrick with questions about the report. She also requested to see ECG/SCG's current balance sheets. About the same time, ECG/SCG began experiencing difficulties paying quarterly salaries and dividends on time. Winecock and Carrick told

3

the board of directors that the problems were due to accounting errors and delayed payments from commercial payers. Dr. Watkins did not receive the requested balance sheets until around November 2008. At the same time, Winecock sent an email to the board of directors expressing confidence in the finances of the company. However, Dr. Watkins's review of the balance sheets she received showed inconsistencies in the companies' debt to equity ratio.

In January of 2009, Dr. Watkins and fellow board director Robert Gildersleeve ("Gildersleeve") spent several hours reviewing the balance sheets. Their review led them to talk to KSM directly about the companies' finances. On or about January 12, 2009, Winecock's administrative assistant, Melita Flowers, informed Dr. Watkins that a staff accountant at ECG/SCG had hired an attorney to discuss concerns about the financial practices at the companies. On January 29, 2009, Dr. Watkins spoke with Jennifer Abrell ("Abrell"), counsel for ECG/SCG. Dr. Watkins wanted to set up a meeting with the accountants at KSM to discuss ECG/SCG's financial state. Abrell informed Dr. Watkins that KSM also desired to meet with company leadership to discuss its concerns about Winecock and Carrick.

On February 3, 2009, Dr. Watkins, Gildersleeve, and Abrell met with KSM. KSM conveyed its concerns regarding improper accounting practices to the board of directors. KSM told the directors that it would need access to all of ECG/SCG's accounting records to confirm its suspicions. The next day, the board of directors placed Winecock on personal leave and gave KSM all of the information requested to perform its investigation. The directors and a representative of KSM also met with Carrick. At that

4

meeting, Carrick revealed that she and Winecock engaged in fraudulent practices with the companies' finances. KSM's investigation revealed that the company had no cash on hand, little available lines of credit for operations, and flawed financial reporting. Specifically, KSM found that the financial reports for ECG/SCG contained intentionally overstated figures for accounts receivable, inventory, and unapplied cash. ECG and SCG had been insolvent since December 2006 and July 2008 respectively. Proceeds from loans rather than profits from company operations were used to pay salaries and dividends, making shares in the company virtually worthless. The board of directors terminated Winecock on February 18, 2009 and Carrick on March 13, 2009.

On or about April 28, 2010, Rapkin originally filed a complaint as a direct action against Dr. Roch, Dr. Watkins, Cardinal Health, Winecock, Carrick, and Blue alleging that "willful misconduct, recklessness, breach of fiduciary duty, mismanagement and/or fraud committed by the Defendants," caused Rapkin to lose the value of its investment. (App. 83). After receiving more time to respond, Dr. Roch and Dr. Watkins filed an answer to the complaint and a motion to dismiss Rapkin's direct action on June 22, 2010. A hearing on Dr. Roch's and Dr. Watkins's motion was held on December 16, 2010. On January 18, 2011, the trial court issued an order finding that Rapkin's initial complaint for fraud and breach of fiduciary duty could not be brought as a direct action and granted the motion to dismiss. Rapkin thereafter filed an amended verified complaint for a derivative action and a motion for jury trial on January 27, 2011. After receiving additional time to respond, Dr. Roch and Dr. Watkins filed their answer to Rapkin's amended complaint on March 24, 2011.

On April 7, 2012, Dr. Roch and Dr. Watkins filed a motion for summary judgment. After receiving additional time to respond, Rapkin filed its response on October 16, 2012. The trial court permitted Dr. Roch and Dr. Watkins to file a reply, which they submitted on December 17, 2012. Dr. Roch and Dr. Watkins also filed a motion to strike certain documents from Rapkin's designation of evidence for failure to comply with the requirements of Indiana Trial Rule 56(E). After a hearing on the motions, the trial court issued an order on February 14, 2013 granting Dr. Roch's and Dr. Watkins's motion to strike in part and entering summary judgment in favor of Dr. Roch and Dr. Watkins.[2] Rapkin now appeals the trial court's summary judgment order.

## DECISION

When reviewing a trial court's order granting summary judgment, we apply the same standard used in the trial court. *Kopczynski v. Barger*, 887 N.E.2d 928, 930 (Ind. 2008). Summary judgment is appropriate only where the designated evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). "All facts and reasonable inferences drawn from [the designated evidence] are construed in favor of the non-moving party." *Gunkel v. Renovations*, 822 N.E.2d 150, 152 (Ind. 2005). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine'

---

[2] After the filing of this appeal, Dr. Roch and Dr. Watkins, pursuant to Ind. Appellate Rule 42, filed a motion to strike portions of Rapkin's brief and appendix because both contained information that the trial court struck from the record. By separate order, we denied the motion. The standard of review confines our analysis to the designated evidence. Accordingly, Dr. Roch and Dr. Watkins ask us to strike one answer to an interrogatory and one exhibit. While we agree that it is bad form on Rapkin's part to include the stricken materials, their inclusion is not so "redundant, immaterial, impertinent, scandalous, or otherwise inappropriate" per Ind. Appellate Rule 42 as to warrant granting a motion to strike in this instance.

if a trier of fact is required to resolve the parties' differing accounts of the truth . . . , or if the undisputed facts support conflicting reasonable inferences." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (internal citations omitted). When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 608 (Ind. Ct. App. 2008), *trans. denied*. A trial court's grant of summary judgment is "clothed with a presumption of validity," and an appellant has the burden of demonstrating that the grant of summary judgment was erroneous. *Indiana Dept. of State Revenue v. Caylor-Nickel Clinic, P.C.*, 587 N.E.2d 1311, 1313 (Ind. 1992). In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the designated evidence. *SMDfund, Inc. v. Fort Wayne–Allen Cnty. Airport Authority*, 831 N.E.2d 725, 728 (Ind. 2005), *cert. denied*.

We first note that Rapkin concedes in its brief that Dr. Watkins did not commit actual or constructive fraud. Putting those claims aside, Rapkin claims that the designated evidence shows a genuine issue of material fact regarding its claims of actual and constructive fraud that preclude summary judgment in favor of Dr. Roch. Specifically, Rapkin claims that Dr. Roch, as founder, the largest shareholder, and an emeritus board member of ECG/SCG, would have been aware of the true financial health of the companies. In addition, Rapkin claims Dr. Roch's knowledge of the financial state of the companies can be inferred by Dr. Roch choosing not to purchase additional shares

7

in ECG/SCG from Cardinal Health. Regarding its claim of breach of fiduciary duty against Dr. Roch, Rapkin relies on the same arguments asserted for actual and constructive fraud. As to Dr. Watkins, Rapkin claims that she breached her fiduciary duty by failing to learn about the financial structure of the company, not reviewing the loan agreements of the companies, and not meeting with Blue to discuss the financial statements provided to Winecock.

1. Actual Fraud and Constructive Fraud

To succeed on a claim of actual fraud, a party must establish the following elements: 1) the fraud feasor must have made at least one representation of past or existing fact; 2) which was false; 3) which the fraud feasor knew to be false or made with reckless disregard as to its truth or falsity; 4) upon which the plaintiff reasonably relied; 5) and which harmed the plaintiff. *Heyser v. Noble Roman's Inc.*, 933 N.E.2d 16, 19 (Ind. Ct. App. 2010), *trans. denied*. "Actual fraud may not be predicated upon representations of future conduct." *Siegel v. Williams*, 818 N.E.2d 510, 515 (Ind. Ct. App. 2004).

Constructive fraud arises by an operation of law from conduct which, if legal, would grant an unconscionable advantage, irrespective of the actual intent to defraud. *Drudge v. Brandt*, 698 N.E.2d 1245, 1250 (Ind. Ct. App. 1998). The elements of constructive fraud are different from the elements of actual fraud as follows: 1) a duty owing by the party to be charged to the complaining party due to their relationship; 2) violations of that duty by the making of deceptive material misrepresentation of past or existing facts or remaining silent when a duty to speak exists; 3) reliance thereon by the

8

complaining party; 4) injury to the complaining party as a proximate result thereof; and 5) the gaining of an advantage by the party to be charged at the expense of the complaining party. *See Siegel*, 818 N.E.2d at 515-16.

In support of their motion for summary judgment, Dr. Roch and Dr. Watkins designated the following items: affidavits from Margaret Brackett and Dr. Watkins; the trial court's order granting a previously filed motion to dismiss; Rapkin's amended complaint; the answer to that complaint, including the exhibits attached to it, and all pleadings filed in this matter. Dr. Roch also submitted a memorandum in support of his motion for summary judgment. In response, Rapkin designated the same materials as Dr. Roch and Dr. Watkins, as well an affidavit from Dr. Rapkin, portions of depositions from Dr. Watkins and Gildersleeve, and Dr. Rapkin's answer to an interrogatory. Rapkin also filed a memorandum opposing the motion for summary judgment.

Rapkin claims the designated evidence shows that Dr. Roch's actions fulfill all of the elements of actual and constructive fraud and precludes summary judgment in his favor. Yet, we need not fully evaluate every element. Dr. Roch's motion for summary judgment can succeed by negating one element of Rapkin's claim. *See Whorley*, 891 N.E.2d at 608.

The designated evidence shows no statements specifically made by Dr. Roch to Rapkin that it subsequently relied on to its detriment. Constructive fraud can be supported by one remaining silent when one has a duty to speak. However, nothing in the designated evidence exists from which we can reasonably infer that Dr. Roch knew about the companies' debt or Winecock and Carrick's fraudulent acts. Without a

9

misrepresentation of past or existing fact, or some evidence from which a reasonable inference can be drawn showing Dr. Roch had a duty to speak, essential elements of Rapkin's claims for fraud are negated. The trial court's grant of summary judgment on Rapkin's claims of actual and constructive fraud was appropriate. *See e.g.*, *Pugh's IGA, Inc. v. Super Food Services, Inc.*, 531 N.E.2d 1194, 1199 (Ind. Ct. App. 1988) (finding that claims of actual and constructive fraud failed where there was no evidence a misrepresentation of past or existing fact or reliance from the complaining party), *trans. denied*.

## 2. Breach of Fiduciary Duty

We note first that in its brief, Rapkin incorporated the same arguments for actual and constructive fraud to support its claims of breach of fiduciary duty against Dr. Roch. However, seeing as we have found that Dr. Roch has successfully negated at least one of the elements of both claims of fraud, there can be no breach of fiduciary duty if the claims of fraud fail. Rapkin's claim against Dr. Roch for breach of fiduciary duty therefore fails.

In its remaining claim, Rapkin alleges that Dr. Watkins breached her fiduciary duty to the companies. Specifically, Rapkin alleges that Dr. Watkins breached her fiduciary duty to the companies by failing to learn about the financial structure of the company, not reviewing the loan agreements of the companies, and not meeting with Blue to discuss the financial statements provided to Winecock.

A claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary relationship; (2) a breach of that duty owed by the fiduciary to the

10

beneficiary; and (3) harm to the beneficiary. *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010), *trans. denied.* None of the parties dispute that Dr. Watkins owed a fiduciary duty to ECG/SCG. Therefore, our decision rests upon whether Dr. Watkins breached her duty, and if so, whether it caused harm to Rapkin.

Indiana Code § 23-1-35-1(e) provides that:

[a] director is not liable for any action taken as a director, or any failure to take action, unless: (1) the director has breached or failed to perform the duties of the director's office in compliance with this section; and (2) the breach or failure to perform constitutes willful misconduct or recklessness.

"Indiana has statutorily implemented a strongly pro-management version of the business judgment rule." *G&N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 238 (Ind. 2001). "A director is not to be held liable for informed actions taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." *Id.* In evaluating a potential breach of fiduciary duty, Ind. Code § 23-1-35-1(a) requires that we evaluate a director's actions based on the facts known to the director. Further, the Official Comments to subsection (a) state that, "[t]he phrase 'based on facts then known to the director' was added to subsection (a) to emphasize that a director's conduct must be judged based on what he[/she] knew at the time of a decision, and not on what the benefit of hindsight may later reveal." Finally, Ind. Code § 23-1-35-1(b)(1), provides the following:

(b) In discharging the director's duties[,] a director is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by:

> (1) one (1) or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented;

Here, the designated evidence shows that Winecock had been an employee of the companies since 1998 and Carrick since 1984. Both were promoted to the positions of CEO and CFO before Dr. Watkins joined the company. Blue submitted financial reports to Winecock and Carrick. Winecock and Carrick would present the reports to the board of directors. Winecock and Carrick never reported any irregularities in the financial statements to the board of directors. Dr. Watkins noticed inconsistencies with the reports in 2008 and drafted a letter to Winecock seeking an explanation and requesting to see the current balance sheets. Dr. Watkins stated in her deposition and affidavit that Winecock stalled in getting the information to Dr. Watkins and blamed Carrick for the delays. Three months later, Carrick provided the balance sheets to Dr. Watkins. Dr. Watkins reasonably relied on the information provided by longtime and experienced employees of the companies until it became apparent that she no longer could. At that point, Dr. Watkins and the board of directors began an investigation that resulted in the termination of Winecock and Carrick. As a result, there is no genuine issue of material fact that would lead a reasonable fact finder to conclude there was a breach of a fiduciary duty by Dr. Watkins.

Additionally, Rapkin's assertion that the operating agreements prevent Dr. Watkins's reliance on Ind. Code § 23-1-35-1(b)(1) is without merit. The operating agreements contain no language supporting this claim. In fact, Article V of both operating agreements clearly state that, "[e]ach Member's liability shall be limited as set

12

forth in this Operating Agreement, the Indiana Act, and other applicable law." (App. 107, 133). The designated evidence reveals no willful or reckless misconduct, nor unreasonable reliance on the part of Dr. Watkins. Accordingly, Rapkin's claim against Dr. Watkins for breach of a fiduciary duty fails.

We find no error in the trial court's grant of summary judgment.

Affirmed.

CRONE, J., concurs.

BARNES, J., concurs in result.