

IN THE

# Court of Appeals of Indiana

Michael Watters,

*Appellant-Defendant*

v.

Brandi Cole,

*Appellee-Plaintiff*



FILED

Apr 02 2026, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

April 2, 2026

Court of Appeals Case No.
25A-CT-1703

Appeal from the Franklin Circuit Court

The Honorable Alex J. Dudley, Judge

Trial Court Cause No.
24C01-2305-CT-264

**Opinion by Judge May**
Judges Mathias and Felix concur.

**May, Judge.**

[1] Michael Watters appeals the trial court's judgment in favor of Brandi Cole. We address the following two issues:

> 1. Whether the trial court clearly erred in finding that Watters, through his company Allure Pools & Spas, Inc. ("Allure Pools"), made fraudulent misrepresentations to Cole that prompted her to contract with Allure Pools to install a swimming pool in her backyard; and

> 2. Whether the trial court clearly erred when it ruled Cole was entitled to pierce Allure Pools' corporate veil and hold Watters personally liable.

We affirm.

## Facts and Procedural History

[2] Watters started Allure Pools in April 2021. Prior to opening Allure Pools, Watters had no experience installing pools, but he did have experience with homebuilding and remodeling through his company Allure Residential and Commercial Inc. ("Allure Residential"). On its website, Allure Pools claimed it had "over 52 years combined experience in the building and pool industry." (Ex. Vol. 3 at 15.) Allure Pools' Facebook page stated: "Allure Pools & Spas installs swimming pools, spas, patios, decks, pool enclosures, etc. We specialize in FIBERGLASS POOLS." (*Id*. at 8) (formatting in original). On April 14, 2021, Allure Pools posted on its Facebook page: "Want a pool or spa in July 2021? Call or PM today before all appointments are gone!" (*Id*. at 13.) On April 19, 2021, Allure Pools posted: "We're booking up fast, but we can install above ground pools in May 2021!" (*Id*. at 10.)

[3]     Cole first learned about Allure Pools through Facebook. She contacted the company, and Watters met her at her house in October 2021. They discussed where Cole wanted the pool to be installed in her backyard and the characteristics Cole wanted the pool to have. Cole observed that Watters "seemed very knowledgeable about construction." (Tr. Vol. 2 at 216.) During the meeting, Watters gave Cole a sheet of paper listing several projects Allure Residential had performed. He did not disclose that Allure Pools had just been formed in April, that Watters did not have experience installing pools before starting the company, or that the entire project would be performed by subcontractors.

[4]     On October 12, 2021, Cole signed a contract agreeing to pay Allure Pools $100,400 for Allure Pools to install an in-ground fiberglass swimming pool on her property in Franklin County. The contract listed the contractor's duties, including:

> 6.1. All work shall be in accordance to the provisions of the plans and specifications. All systems shall be in good working order.
>
> 6.2. All work shall be completed in a workman like manner, and shall comply with all applicable national, state and local building codes and laws.

(Ex. Vol. 3 at 39.) In addition, the contract included a warranty provision:

> 13.1. At the completion of this project, Contractor shall execute an instrument to Owner warranting the project for 1 YEAR against defects in workmanship or materials utilized. The

manufacturer's warranty will prevail. No legal action of any kind relating to the project, project performance or this contract shall be initiated by either party against the other party after one year beyond the completion of the project or cessation of work.

(*Id.* at 41) (formatting in original). The contract also included a provision specifying that the prevailing party in any litigation related to the contract was entitled to attorney fees.

[5] Watters ordered an Imagine-brand fiberglass pool mold for Cole from Explore Industries ("Explore") and Explore delivered the fiberglass mold to Cole's house on April 26, 2022. The fiberglass mold sat in Cole's front yard for about five weeks. Subcontractors hired by Allure Pools then excavated a large hole in Cole's backyard, installed the pool, and poured concrete. In the ensuing weeks, Cole observed that the pool water was dirty and the pool lost significant amounts of water. A crack developed on the pool's bottom step. Jeff Anderson, an Explore employee, repaired the crack. The crack redeveloped in the same spot shortly thereafter. Anderson believed the crack reappeared because "[t]here was a backfill[1] issue." (App. Vol. 3 at 132) (footnote added). He observed that there was no backfill under the portion of the pool's bottom step that was cracking. Watters put concrete in the spot where the crack

---

[1] "Backfilling is the process of filling the gap between the fiberglass pool shell and the excavated hole (also known as 'locking in' the pool)." Perma | Inground Fiberglass Pool Installation | Latham Pool.

reappeared to make up for the missing backfill, and Anderson repaired the crack.

[6] Cole continued to experience problems with the pool. In March 2023, she contacted Quentin Bischoff, the owner of Bischoff Plumbing Services, a plumbing and pool installation business, to examine the pool. Bischoff determined the pool was damaged beyond repair and prepared an estimate for the pool to be removed and completely replaced. In the estimate, Bischoff explained that the steps were "not solid" and the shallow area near the entrance of the pool was "flexing when walked on." (Ex. Vol. 3 at 85.) He also observed "some of the side ledges to have some small stress cracks[.]" (*Id.*) Bischoff attributed these issues to improper backfilling because proper backfilling "is very important to keep the shape of the pool[.]" (Tr. Vol. 2 at 138.) It prevents the pool's walls from "caving in from ground pressure." (*Id.* at 155.) In addition, Bischoff noted that 3 out of 5 "return lines from the pump back into the pool" did not hold air. (Ex. Vol. 3 at 85.) This signaled underground leaking. He wrote that the individual who installed the pool "could not have put a[n] air test on the plumbing after installing or leaks would have been found before concrete was poured[.]" (*Id.*)

[7] On May 23, 2023, Cole filed suit against Allure Pools and Watters alleging claims of breach of contract, breach of express warranty, fraudulent misrepresentation, and a count seeking to pierce the corporate veil of Allure Pools. Watters and Allure Pools filed a counterclaim seeking to collect the portion of the contract price Cole had not paid. The trial court held a two-day

bench trial in March 2025. Regarding the state of Allure Pools' business at the time of trial, Watters testified:

Q. Okay. Is Allure Pools and Spas Inc. still in business?

A. Yes.

Q. Okay. Does it have any current jobs?

A. No.

Q. Okay. Does it have any pending jobs?

A. No.

Q. Okay. Does it have any assets right now?

A. No.

Q. Okay. Does it have any – other than what you're claiming Ms. Cole owes you, does it have any outstanding amounts owed to it?

A. No.

(Tr. Vol. 2 at 22.) Regarding Watters' experience and the operation of Allure Pools, Watters explained:

Q. Okay. Do you agree with me that you had no prior experience in installing pools when you formed Allure Pools and Spas in April of 2021?

A. Correct.

Q. Okay. In fact, even to this day, Allure doesn't actually do any of the work installing pools, correct?

A. We have our subcontractors that does the workforce [sic].

Q. You sub out a hundred percent of the work, right, and manage the project?

A. We have been. Yes. We use a licensed excavating company that actually does housing, digs basements, so they put the pool in. We use a licensed plumber to do the gas lines. We do [sic] a licensed electrician to run the electric. Then we have our tile people put the travertine in and then use the same concrete people to pour concrete.

Q. All subcontractors, right?

A. Correct.

* * * * *

Q. Okay. But you'd agree with me that at the time you formed the Allure Pools and Spas, the 52 years of experience would've been zero pool and 52 years in the building industry, correct?

A. Correct.

(*Id*. at 22-23.)

On April 23, 2025, the trial court issued an order with findings of fact and conclusions of law. The trial court concluded:

> 1. The Court concludes that Defendant breached the contract.
>
> * * * * *
>
> 4. The evidence shows that Defendant failed to properly backfill Cole's pool and that pool equipment was not properly installed leading to continued leaks.
>
> 5. Quientin Bischoff, an expert in this field, outlined myriad defects with the pool's installation. Moreover, he found that it was not properly backfilled nor installed in a workmanlike manner, requiring an entire pool replacement to solve the issues.
>
> 6. The Court finds that Defendant failed to complete the pool installation in a workmanlike manner, and therefore, breached the contract.
>
> * * * * *
>
> 12. The Court concludes that Defendants breached its express warranty of workmanship.
>
> 13. The contract between Defendants and Cole states "All work shall be completed in a workman like manner[.]"
>
> 14. As discussed *supra*, the evidence shows that Defendants failed to install Cole's pool in a workmanlike manner, and therefore, breached the express warranty in the contract.

\* \* \* \* \*

18. The Court concludes that Plaintiff has established fraudulent misrepresentation by Defendants.

\* \* \* \* \*

20. Plaintiff only reached out to Defendants after viewing their advertisements for pool installations, which stated appointments were "booking up fast," and that "Allure Pools & Spas, Inc. has over 52 years combined experience in the building and pool industry."

21. Allure, however, had no experience in either industry. It was only formed in April of 2021.

22. Defendants had never installed a pool prior to signing the contract with Cole.

23. Allure Residential and/or Watters is the only party that has experience, all of which is in the construction industry. Furthermore, Allure Residential is never mentioned in the advertisement.

24. It is worth noting that Watters never disclosed to Cole that the entire project would be completed by sub-contractors rather than Defendants. This further evidences Watters's intent to deceive Cole into believing Defendants were a reputable pool installation company with vast experience.

\* \* \* \* \*

27. The Court concludes that Plaintiff has met her burden regarding her piercing the corporate veil claim.

* * * * *

33. Watters formed Allure in April 2021, and is the only owner and shareholder.

34. Allure has what seems to be a single employee, *i.e.* [Julie] Hayden.

35. Having no assets, Allure is clearly undercapitalized.

36. Allure's advertising regarding its supposed "52 years of experience" in the pool business is a blatant fraudulent misrepresentation that was highly relied upon by Cole in choosing to do business with Defendants.

37. Moreover, Defendants did not conduct any of the pool installment work. The pool is supplied by Imagine Pools and every aspect of the installation is completed by subcontractors. A fact that Watters concealed from Cole when attempting to obtain her business. Simply put, Defendants are a glorified conduit posing as a highly experience pool installation company.

38. While Indiana Courts are reluctant to pierce the corporate veil, in this matter, it is what is just and equitable.

39. Given that Allure is undercapitalized, Watters made fraudulent misrepresentations, and used the corporate form to fraud and injustice, the Court finds that piercing the corporate veil is proper in this matter and holds Watters personally liable for the damages awarded.

(App. Vol. II at 15-18) (errors and first pair of brackets in original). The trial court found against Watters and Allure Pools on their counterclaim, and it awarded Cole $70,800 in compensatory damages and $54,699.15 in attorney fees, for a total award of $125,499.15.

## Discussion and Decision

[9] Watters does not challenge the trial court's finding that Allure Pools breached its contract with Cole because the pool was not installed in a workmanlike manner. Rather, he argues the trial court clearly erred when it found that he made fraudulent misrepresentations to Cole and when it concluded, based in part on the fraudulent misrepresentation finding, that Cole was entitled to pierce the corporate veil and hold Watters personally liable. When reviewing the trial court's findings and conclusions entered pursuant to Trial Rule 52,[2]

> we will not set aside the findings or judgment unless they are clearly erroneous. A finding is clearly erroneous when there are no facts or inferences drawn therefrom which support it. We neither reweigh the evidence nor judge the credibility of the witnesses, and we consider only the evidence and reasonable inferences drawn therefrom that support the findings. A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. A judgment is also clearly erroneous when the trial

---

[2] Indiana Trial Rule 52 states: "Upon its own motion, or the written request of any party filed with the court prior to the admission of evidence, the court in all actions tried upon the facts without a jury or with an advisory jury . . . shall find the facts specially and state its conclusions thereon."

court applies the wrong legal standard to properly found facts. In addition, we review the trial court's legal conclusions de novo.

*Card v. Sprinkle*, 194 N.E.3d 627, 634 (Ind. Ct. App. 2022) (internal citations and quotation marks omitted), *trans. denied*. We accept unchallenged findings of fact as true. *Moriarty v. Moriarty*, 150 N.E.3d 616, 626 (Ind. Ct. App. 2020).

[10] When, as here, the trial court enters findings of fact and conclusions of law without a written request made prior to the admission of evidence, the findings and conclusions are considered sua sponte. *Erie Ins. Exch. v. Sams*, 20 N.E.3d 182, 187 (Ind. Ct. App. 2014), *trans. denied*. In such instances, "the specific findings control our review and the judgment only as to the issues those specific findings cover. Where there are no specific findings, a general judgment standard applies, and we may affirm on any legal theory supported by the evidence." *Id*. (internal citation omitted).

## 1. Fraudulent Misrepresentation

[11] Watters challenges the trial court's ruling that Cole succeeded on her fraudulent misrepresentation claim. An ordinary claim for fraudulent misrepresentation requires the plaintiff to prove five elements: "(i) material misrepresentation of past or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury." *Johnson v. Wysocki*, 990 N.E.2d 456, 460-61 (Ind. 2013) (quoting *Reed v. Reid*, 980 N.E.2d 277, 292 (Ind. 2012)).

[12] Watters asserts "[t]he statement '52 years of combined experience in the building and pool [i]ndustry' is not actionable as fraud as it amounts to opinion[.]" (Appellant's Br. at 21.) However, a company's statement about its years of experience is a fact capable of being proven true or false. *See CoMentis, Inc. v. Purdue Research Found.*, 765 F.Supp.2d 1092, 1106 (N.D. Ind. 2011) ("[E]xpressions of opinion cannot be the basis for an action in fraud; an action in fraud requires a misrepresentation of material fact. Nonetheless, . . . if a statement is susceptible of exact knowledge when made, it is a statement of fact rather than opinion.") (internal quotation marks, brackets, and citation omitted). Allure Pools was formed in 2021, so the business itself had not existed for 52 years. While Watters had significant construction experience in the homebuilding and remodeling industry, he did not have any experience installing pools. Thus, the assertion that some of his experience was in the "pool industry," (Ex. Vol. 3 at 15), misrepresented the nature of his experience.

[13] Watters further contends "there is no evidence" the statement about the company's experience "was material, no evidence that Cole relied on the statement, and no evidence that Watters intentionally or recklessly misrepresented the fact to Cole." (Appellant's Br. at 21-22.) However, Cole testified that she learned of Allure Pools through Facebook, and she requested a link to the website from Watters. Thus, it is a fair inference that she relied on the statements made on the website and the Facebook page when hiring Allure Pools, and the trial court did not clearly err in drawing that inference. *See*, *e.g.*, *Siegel v. Williams*, 818 N.E.2d 510, 516 (Ind. Ct. App. 2004) (holding evidence

supported trial court's finding that attorney falsely misrepresented his ability to pay former clients' legal malpractice claim against him). Likewise, it was not clear error for the trial court to find that Watters's failure to disclose that the project would be entirely performed by subcontractors "further evidence[d] Watters's intent to deceive Cole into believing Defendants were a reputable pool installation company with vast experience." (App. Vol. 2 at 17.) Cole testified that had she known Watters did not have experience installing pools, she would not have hired him and that had she known Watters intended to employ subcontractors, she would have at least asked him more questions. Thus, the misrepresentations were material. *See*, *e.g.*, *Safe Auto Ins. Co. v. Farm Bur. Ins. Co.*, 867 N.E.2d 221, 225-26 (Ind. Ct. App. 2007) (holding insured's failure to disclose her move out of state was a material misrepresentation because insurer would not have renewed her policy had that fact been known), *trans. denied*. Watters's argument that these falsehoods had no impact on Cole's decision to hire Allure is a request for us to reweigh the evidence, which we will not do. *See Harris v. Copas*, 165 N.E.3d 611, 622 (Ind. Ct. App. 2021) (explaining that appellant's "arguments are unpersuasive, as crediting them would entail ignoring our standard of review which prohibits us from reweighing the evidence, reassessing the credibility of the witnesses, and considering evidence that does not support the trial court's determination"). Consequently, evidence supported the trial court's findings related to Cole's fraudulent misrepresentation claim, and those findings supported its conclusion

that Cole successfully proved that claim.[3]  *See*, *e.g.*, *Siegel*, 818 N.E.2d at 516 (Ind. Ct. App. 2004) (holding trial court's judgment for fraud was not clearly erroneous when it was supported by the trial court's findings).

## 2. Corporate Veil

[14]  Watters also challenges the trial court's judgment that Cole was entitled to pierce Allure Pools' corporate veil and hold him personally liable.  "The basic principle of corporate law is that corporate shareholders are liable for acts of the corporation only to the extent of their investment and are not personally liable for the corporation's acts."  *CBR Event Decorators, Inc. v. Gates*, 962 N.E.2d 1276, 1281 (Ind. Ct. App. 2012), *trans. denied*.  "However, courts may invoke the equitable doctrine of piercing the corporate veil in order to protect innocent third parties from fraud or injustice."  *White v. Am. Legion Post #354, Inc.*, 267 N.E.3d 451, 461 (Ind. Ct. App. 2025), *trans. denied*.  The remedy of piercing the corporate veil provides a means "for a complainant to reach a second corporation or individual upon a claim that otherwise would have existed only against the first corporation."  *Elpers Bros. Constr. & Supply, Inc. v. Smith*, 230 N.E.3d 920, 930 (Ind. Ct. App. 2024), *trans. denied*.  "The party seeking to pierce the corporate veil bears the burden of establishing that: (1) the corporate form was 'so ignored, controlled or manipulated that it was the mere

---

[3] Because we affirm the trial court's judgment related to Cole's fraudulent misrepresentation claim based on other misrepresentations, we need not address Watters's argument that "[t]he statement 'booking up fast' is not actionable as fraud.  Rather, it is 'textbook puffery.'"  (Appellant's Br. at 20) (quoting *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 329 (Ind. 2013)).

instrumentality of another' and (2) 'that the misuse of the corporate form would constitute a fraud or promote injustice.'" *CBR Event Decorators, Inc.*, 962 N.E.2d at 1282 (quoting *Escobedo v. BHM Health Assocs., Inc.*, 818 N.E.2d 930, 933 (Ind. 2004)).

[15] "When a court exercises its equitable power to pierce a corporate veil, it engages in a highly fact-sensitive inquiry." *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1232 (Ind. 1994). A list of factors the trial court may consider in determining whether to pierce the corporate veil includes:

> (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form.

*Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994). "This list of factors is not necessarily exhaustive, and all factors need not be shown to support a decision to pierce the corporate veil." *Longhi v. Mazzoni*, 914 N.E.2d 834, 839 (Ind. Ct. App. 2009), *trans. denied*.

[16] The trial court found piercing the corporate veil was proper because Allure Pools "is undercapitalized, Watters made fraudulent representations, and used the corporate form to fraud and injustice[.]" (App. Vol. 2 at 18.) Watters contends "[t]here is no evidence in the record to conclude Allure was

undercapitalized." (Appellant's Br. at 27.) However, Watters testified the company had no assets, no current jobs, no pending jobs, and no outstanding amounts owed to it aside from those owed by Cole. In addition, as explained above, the trial court's findings with respect to Cole's claim of fraud were supported by the evidence, and its judgment that Cole successfully proved her fraudulent misrepresentation claim was not clearly erroneous. Misrepresentations by Watters and Allure Pools resulted in Cole contracting with Allure Pools to have a pool installed in her backyard. The pool was not installed in a workmanlike manner resulting in the pool needing to be wholly replaced. Allowing Watters to hide behind the corporate veil of a company that has no assets and no anticipated future income would be unjust because it would effectively prohibit Cole from recovering for the harm she suffered because she was defrauded. Therefore, the trial court's findings supported its judgment that Cole was entitled to pierce the corporate veil of Allure Pools, and we affirm the trial court.[4] *See, e.g.*, *Blackwell v. Superior Safe Rooms LLC*, 174 N.E.3d 1082, 1098 (Ind. Ct. App. 2021) (holding judgment creditor was entitled to pierce the corporate veil of garnishee defendants when their misrepresentations led the judgment creditor to obtain a judgment against an

---

[4] We do not address Watters's additional arguments because they are either waived due to not being advanced before the trial court or are moot because they relate to counts for which the trial court awarded no damages. *See Israel v. Israel*, 189 N.E.3d 170, 177 (Ind. Ct. App. 2022) ("[A]n issue raised by an appellant for the first time on appeal is waived."), *trans. denied*; *see also*, *In re F.S.*, 53 N.E.3d 582, 590 (Ind. Ct. App. 2016) ("An appeal or issue is deemed moot when no effective relief can be rendered to the parties before the court.").

instrumentality that did no business and had no capitalization, income, or assets), *trans. denied*.

## Conclusion

The trial court did not clearly err when it entered judgment in favor of Cole on her fraudulent representation claim or when it ruled Cole was entitled to pierce the corporate veil and hold Watters personally liable. Accordingly, we affirm the trial court.

Affirmed.

Mathias, J., and Felix, J., concur.

ATTORNEYS FOR APPELLANT

Taylor Ferguson
Andrew Dutkanych III
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Joseph M. Sprafka III
Reardon & Chasar, LPA
Cincinnati, Ohio