ATTORNEYS FOR APPELLANT

Jane Dall Wilson
Andrew M. McCoy
Faegre Baker Daniels LLP
Indianapolis, Indiana



FILED

Jun 28 2016, 9:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rachel Staggs,<br>*Appellant-Defendant*,<br><br>v.<br><br>Corena Buxbaum,<br>*Appellee-Plaintiff*. | June 28, 2016<br><br>Court of Appeals Case No.<br>47A04-1510-PL-1758<br><br>Appeal from the Lawrence Circuit<br>Court<br><br>The Honorable Andrea K.<br>McCord, Judge<br><br>Trial Court Cause No.<br>47C01-0912-PL-1522 |

**Brown, Judge.**

[1] Rachel Staggs appeals the trial court's order awarding treble damages, actual costs, and attorney fees pursuant to the Crime Victim Relief Act ("CVRA") in favor of Corena Buxbaum. Staggs raises two issues which we revise and restate as:

> I.  Whether the trial court applied the wrong standard in awarding exemplary damages under the CVRA; and
>
> II.  Whether the court's award of exemplary damages is clearly erroneous.

We affirm.

## Facts and Procedural History

[2] This is an appeal following remand from this court. In our first decision we summarized the facts as follows:

> In 1998, Staggs married Dwight Staggs and moved into his residence (the Property). In 2005, Dwight passed away and Staggs became the sole owner of the Property.
>
> In 2008, Staggs decided to sell the Property. On the Seller's Residential Real Estate Sales Disclosure Form, Staggs indicated that the septic field/bed was not defective, that she did not know the condition of the septic and holding tank/septic mound, and that there were no moisture or water problems in the basement.
>
> Buxbaum was interested in purchasing the Property. She visited the house twice and did not notice any moisture problems in the basement. Buxbaum hired an inspector, who identified a radon problem on the Property but did not identify any other problems.

On August 27, 2008, Buxbaum purchased the Property from Staggs. Shortly thereafter, Buxbaum attempted to locate the septic system on the Property as she planned to build a garage and did not want to build above the septic tank. Eventually, Buxbaum learned that there was no septic system on the Property. Instead, sewage was expelled through a sewage pipe that traversed several hundred feet across the Property and terminated at the back of the Property.

In November 2008, Buxbaum learned that there was a leak in the basement. An employee of the company Buxbaum hired to remedy the moisture problems stated that he believed the basement had been leaking for years, as he observed water stains and noticed that the floor had been pushed up because of hydrostatic pressure.

On December 14, 2009, Buxbaum filed a complaint against Staggs, alleging a single count of fraudulent misrepresentation. A bench trial took place on May 12 and December 12, 2013. On the first day of the trial, Staggs was represented by attorney Philip Chamberlain. Between the first and second days of trial, Mr. Chamberlain's license to practice law was suspended, so Staggs appeared pro se at the second day of trial.

Over the course of the trial, the following evidence was submitted to the trial court:

> • Staggs's stepdaughter testified that she had grown up in the house on the Property. She knew that there was no septic system and stated that she was present for multiple conversations between her father and Staggs in which her father told Staggs that there was no septic system and that one would need to be installed before attempting to sell the Property.

• Staggs's stepdaughter also testified that the basement was wet all the time, that Staggs was aware of that fact, and that at one point in time, the family needed to rent a machine to pump water out of the basement.

• Staggs's stepson testified that he was also present for multiple conversations between his father and Staggs in which his father stated that the Property had no septic system. He also testified that he and Staggs had actually walked through the Property several times and seen the pipe out of which the sewage drained.

• Staggs's stepson also testified that the basement frequently had two to four inches of standing water and that Staggs had moved things out of the basement to avoid water damage.

• In 2007, Scott Nordhoff of Hydra Stone viewed the Property with potential interest of buying it. At that time, he spoke with Staggs about water problems in the basement and Staggs told him that it was a good thing that he was in the waterproofing business. Nordhoff did not buy the Property but did end up waterproofing the basement in 2009 when Buxbaum hired Hydra Stone to solve the problem. Nordhoff testified that he believed the basement had been leaking for years.

Buxbaum had to hire professionals to install a septic system, remedy the moisture issues in the basement, and waterproof the basement. The total cost to her of making these changes was $21,939.58.

On March 4, 2014, the trial court ruled in favor of Buxbaum. Among other things, the trial court found as follows:

2. . . . [Staggs] had actual knowledge of the defects in both the basement and the septic system prior to filling out the disclosure form and selling the home and made false statements of important past and existing facts regarding the basement and septic system.

3. The court finds that it was *not* an error, inaccuracy or omission by [Staggs] that was not within her actual knowledge and would keep her from liability.

* * *

Damages

* * *

3. . . . The court finds that there was the requisite specific intent to make a finding of fraud for the purposes of awarding treble damages. . . . The Court now awards [Buxbaum] her request for treble damages.

Appellant's App. p. 14-15 (emphasis original). The trial court calculated damages as follows: (1) out-of-pocket costs of $21,939.58; (2) treble damages of $65,818.74; and (3) attorney fees of $7,040. The trial court added all of those amounts for a total damages award of $94,798.32.

*Staggs v. Buxbaum (Staggs I)*, No. 47A01-1406-PL-254, slip op. at 2-5 (Ind. Ct. App. February 25, 2015).

[3] This court addressed three issues in *Staggs I*, namely, whether the court erroneously found in favor of Buxbaum on her claim of fraudulent

misrepresentation, whether the court should reconsider an award of treble damages in light of the Indiana Supreme Court's decision in *Wysocki v. Johnson*, 18 N.E.3d 600 (Ind. 2014), and whether the court erred in calculating damages. *Id.* at 6-7, 9. On the fraudulent misrepresentation issue, this Court held that the evidence supported the trial court's judgment and that Staggs's arguments were a request to reweigh the evidence. *Id.* at 7. Regarding treble damages, we observed that *Wysocki* was handed down after the trial court issued its order, that under *Wysocki* "an additional finding of criminal culpability is now required to support an award of treble damages," and that accordingly remand to reconsider the damages award was warranted. *Id.* at 8-9. We also ruled that, to the extent Buxbaum is still entitled to treble damages following remand, "the maximum amount of damages to which she is entitled is $72,858.74 (three times the actual damages of $21,939.58 plus $7,040 in attorney fees)" and that the court in its initial order "actually *quadrupled*, rather than tripled, Buxbaum's actual damages." *Id.* at 9.

[4] On June 16, 2015, the trial court held a hearing in accordance with *Staggs I*, and on September 29, 2015, issued Findings of Fact and Conclusions of Law (the "September Order") ordering that Buxbaum "is entitled to recover $21,939.59 in her actual costs and expenses and $7040.00 in her attorney's fees (*see id.*), plus treble damages of an additional $43,879.18 for a total award of **$72,858.77** which is now entered as a judgment for . . . Buxbaum and against . . . Staggs." Appellant's Appendix at 25. The findings and conclusions contained in the September Order state in part:

## Findings of Fact

* * * * *

12. The sales disclosure form in this case included two separate entries related to the septic system at the Property . . . . More specifically, the first entry is referred to as the "Septic Field/Bed," . . . and the second entry refers to the "Septic and Holding Tank/Septic Mound," . . . .

13. . . . [W]ith respect to the "Septic and Holding Tank/Septic Mound" entry, Ms. Staggs checked the box indicating that she did not know the condition of such tank/mound. . . .

14. With respect to the "septic field/bed" entry, Ms. Staggs checked the box indicating that the field was not defective . . . .

15. [The sales disclosure form] has conflicting statements regarding the septic field and bed and the septic holding tank and septic mound.

16. In sum, it could be construed that there was conflicting evidence as to whether Ms. Staggs knowingly misrepresented the condition of the septic system. The Court credited [Buxbaum's] evidence in its initial opinion in finding a misrepresentation and has not been instructed to re-visit that particular finding. However, the conflicting evidence is relevant to the Court's determination of whether the record shows "criminally culpable" or "heinous" conduct.

17. Neither inspector who inspected the Property identified any water leaks in the basement. . . .

18. Ms. Staggs' step-daughter, Kathy Kopsho, who was called as a witness for [Buxbaum], testified that Ms. Staggs "never even went down to the basement" (Trial Tr. at 99-100), thus contradicting [Buxbaum's] contention that Ms. Staggs had actual knowledge that her basement leaked (and thus that her representations on the sales disclosure form were fraudulent). However, Ms. Staggs' stepson testified that Ms. Staggs was aware of water in the basement from time to time.

19. Based on the above, [Staggs] asks this Court to consider there was conflicting evidence as to whether Ms. Staggs' [sic] misrepresented moisture issues in the basement. The Court credited Ms. Buxbaum's evidence in its initial opinion in finding a misrepresentation and has not been instructed to re-visit that particular finding. However, as with the evidence to the septic system, the conflicting evidence about Ms. Staggs' knowledge of moisture issues in the basement would have also supported a ruling in her favor and bears upon this Court's determination of whether Ms. Staggs acted in a "criminally culpable" or "heinous" manner.

20. [Staggs] asks this Court to consider other extenuating circumstances surrounding the trial. First, that Ms. Staggs was not present during the first day of the bench trial due to health reasons and thus did not hear any of the evidence presented by [Buxbaum] during that first day; however, the Court's record is clear that [Staggs] chose to allow the trial to continue after consulting with her attorney and was clear on the consequences for doing so . . . .

21. Second, that before the second day of the trial, Ms. Staggs' attorney was suspended from the practice of law in Indiana. Ms. Staggs represented herself pro se on the second day of trial without having heard the evidence presented again during the first day of trial. However, the transcript shows that the Court

questioned her regarding self-representation and she chose to proceed on her own. . . .

22.  . . . [T]he Court would have entertained a Motion for Continuance to obtain counsel . . . .

23.  [Staggs] also states that much of the evidence that was elicited during [Buxbaum's] case-in-chief and used against Ms. Staggs was un-objected to hearsay.  However, Ms. Staggs chose to act as her own attorney and was therefore charged with knowing and understanding the Rules of Evidence.

24.  To the extent that any of the above Findings of Fact constitute Conclusions of Law, the Court adopts and incorporates them as such.

## Conclusions of Law

25.  This Court was not instructed to re-visit its conclusion that Ms. Staggs was liable for fraudulent misrepresentation and damages under the CVRA.  However, under *Wysocki*, this Court was asked to re-consider whether the evidence supported a finding that Ms. Staggs committed "heinous" or "criminally culpable" conduct to support the award of treble damages.

26.  In, [sic] *Wysocki*, the Supreme Court states that, "An actual criminal conviction is not required for recovery [under the CVRA]; a claimant merely must prove each element of the underlying crime by a preponderance of the evidence."  . . . .

\* \* \* \* \*

28.  The Court originally found that [Staggs] was fully aware that the home was void of a septic system and that the basement had

issues with water leakage. Although [Staggs] believes that there may have been some conflicting testimony that does not change this Court's original findings. The Court[']s original Findings and Conclusions were very clear that [Staggs] knew the basement had water problems in the past and, although it was dry at the time [Buxbaum] was looking to purchase the home, she failed to disclose the defect. Also, [Staggs] knew that the home did not have a working septic system, only a pipe that ran the sewage to an adjoining farm field, yet she chose to check the boxes on the forms that stated the septic field beds were not defective and that she did not know of the condition of the tank and mound. She did not know of the condition of the tank and mound because there were none and she was fully aware of that fact. She also knew that the septic field was nonexistent as well. All of these statements are knowing and intentionally misleading and a clear attempt to profit from the sale of her home.

29. The form language on [the sales disclosure report] reads:

> "NOTE: "Defect" means a condition that would have a significant adverse effect on the value of the property that would significantly impair the health or safety of future occupants of the property or that, if not repaired, removed, or replaced, would significantly shorten or adversely affect the expected normal life of the premises.
>
> **The information contained in this Disclosure has been furnished by the Seller, who certifies to the truth thereof, based on the Seller's CURRENT ACTUAL KNOWLEDGE.** . . .

This Court finds that [Staggs] had actual knowledge of the defects in her home and the failure to disclose those defects were heinous acts. They could have impaired the health of the future occupants and significantly affected the expected normal life of

the premises. [Staggs] lied for financial gain putting her welfare ahead of the safety and welfare of the future occupants.

30. In making an assessment of criminality under the preponderance standard, the foregoing findings of fact lead the court to a conclusion that [Staggs] did act in a "heinous" and "criminally culpable" manner when she completed her sales disclosure form . . . .

31. To the extent that any of the above Conclusions of Law constitute Findings of Fact, the Court adopts and incorporates them as such.

*Id.* at 10, 15-18, 20-24.

## *Discussion*

[5] Before addressing the issues raised by Staggs, we observe that Buxbaum did not file an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing its arguments, and we apply a less stringent standard of review, that is, we may reverse if the appellant establishes *prima facie* error. *D & D NAPA, Inc. v. Unemployment Ins. Appeals of Ind. Dep't of Workforce Dev.*, 44 N.E.3d 67, 73 (Ind. Ct. App. 2015). This rule was established so that we might be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. *Id.* Questions of law are still reviewed *de novo*. *Id.*

[6] When a trial court enters findings of fact and conclusions thereon, findings control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. *Yanoff v. Muncy*, 688 N.E.2d 1259,

1262 (Ind. 1997). A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.* When a court has made special findings of fact, an appellate court reviews sufficiency of the evidence using a two-step process. *Id.* First, it must determine whether the evidence supports the trial court's findings of fact, and second it must determine whether those findings of fact support the trial court's conclusions. *Id.* Findings will be set aside only if they are clearly erroneous. *Id.* Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. *Id.* We review questions of law *de novo* and owe no deference to the trial court's legal conclusions. *M.K. Plastics Corp. v. Rossi*, 838 N.E.2d 1068, 1075 (Ind. Ct. App. 2005).

## I.

[7] The first issue is whether the court applied the wrong standard in awarding exemplary damages under the CVRA.[1] Staggs argues that because an award of

---

[1] Ind. Code § 34-24-3-1, i.e., the CVRA, provides in part:

> If a person has an unpaid claim on a liability that is covered by IC 24-4.6-5 or suffers a pecuniary loss as a result of a violation of IC 35-43, IC 35-42-3-3, IC 35-42-3-4, or IC 35-45-9, the person may bring a civil action against the person who caused the loss for the following:
>
> (1) An amount not to exceed three (3) times:

exemplary damages under the CVRA is discretionary and "must be based upon an additional finding of 'heinous' or 'criminally culpable' conduct," such damages should be awarded under a clear and convincing evidentiary standard. Appellant's Brief at 14. She references the Indiana Supreme Court's statements in *Andrews v. Mor/Ryde Intern., Inc.*, 10 N.E.3d 502 (Ind. 2014), *reh'g denied*, and suggests that that case is distinguishable from these facts. Staggs asserts that, under *Wysocki*, which held that damages under the CVRA were discretionary, such damages must be awarded pursuant to a clear and convincing evidence standard per the Punitive Damages Act, found at Ind. Code §§ 34-51-3-2, -6. She also argues that, accordingly, the trial court's award of treble damages under a preponderance standard was clearly erroneous, maintaining that "[t]he question presented to the trial court on remand was not whether the CVRA should apply, but instead whether the punitive aspect of CVRA liability (*i.e.*, exemplary damages in the form of, for example, treble damages) was warranted. *Id.* at 17.

[8] Staggs's arguments have no merit. In *Wysocki*, heading II of the Court's opinion states: "A CVRA Claim Requires Proving the Elements of a Criminal

---

(A) the actual damages of the person suffering the loss, in the case of a liability that is not covered by IC 24-4.6-5; or

(B) the total pump price of the motor fuel received, in the case of a liability that is covered by IC 24-4.6-5.

(2) The costs of the action.

(3) A reasonable attorney's fee. . . .

Offense, But Only by the Civil Preponderance Standard . . . ." 18 N.E.3d at 606. The Court stated specifically:

> [A]s we recently reiterated, "An actual criminal conviction is not required for recovery [under the CVRA]; a claimant merely must prove each element of the underlying crime by a preponderance of the evidence." *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 334 (Ind. 2013) (internal citation and quotation marks omitted). *See also Klinker v. First Merchs. Bank, N.A.*, 964 N.E.2d 190, 193 (Ind. 2012) (same); *White*[ *v. Ind. Realty Assocs. II*, 555 N.E.2d 454, 456 (Ind. 1990)] (construing predecessor statute and concluding that "[u]nder this unique statute, a criminal conviction is not a condition precedent to recovery. The claimant need only prove by a preponderance of the evidence that the criminal act was committed by the defendant." (internal citation omitted)); *Obremski v. Henderson*, 497 N.E.2d 909, 911 (Ind. 1986) (construing predecessor statute and concluding that "[t]he appropriate standard is preponderance of the evidence.").

*Id.* These statements make clear that CVRA liability is examined under a preponderance of the evidence standard.

[9] The Court's statements in *Andrews* provide further clarification. In that case, plaintiff Andrews sought recovery under the Indiana Sales Representative Act, Ind. Code §§ 24-4-7 (2007). 10 N.E.3d at 503. In its analysis, the Court observed that "Indiana first restricted common-law punitive damage awards in 1984, when it required them to be proved by 'clear and convincing evidence,'" in which the legislature's goals "were to 'discourage plaintiffs from bringing punitive damages claims,' to 'decrease the plaintiff's windfall recovery' and 'protect defendants from excessive punitive damage awards,' and generally to

'combat perceived ills associated with the rising number of punitive damage awards.'" *Id.* at 504-505. The Court noted that, "[b]y contrast, other causes of action and corresponding remedies are purely the Legislature's own creation," i.e., not a creature of common law, and it specifically referenced the CVRA, "which permits the victims of certain crimes to bring an action for up to three times their pecuniary losses plus attorney fees." *Id.* at 505. The Court noted:

> To the extent those awards exceed the victim's actual damages, their purpose is no less "punitive" or "exemplary" than their common-law counterparts. Yet we held that such actions were not subject to proof by "clear and convincing evidence," as the first version of the Punitive Damages Act required, because "recovery of treble damages under this section is regarded as distinct from recovery of common law punitive damages." *Obremski*, 497 N.E.2d at 911. We agree with Judge Barnes that *Obremski's* distinction between common-law punitive damages and statutory exemplary damages is controlling here.

*Id.*

[10] Thus, the Court in *Andrews* specifically affirmed the rule in *Obremski* and based its reasoning for applying a preponderance of the evidence standard rather than one of clear and convincing evidence not upon whether such damages are mandatory or discretionary, as suggested by Staggs, but instead upon whether they are based in common law or are a creature of statute. Indeed, although Staggs's brief repeatedly attempts to cast CVRA damages as "punitive" and suggests that the holding of *Wysocki* brings the CVRA under the ambit of the Punitive Damages Act, we observe that Ind. Code § 34-24-3-3 provides that a

person may not recover both punitive damages and damages under the CVRA, which provides further support for the conclusion that CVRA damages are distinct from common law punitive damages.[2] We conclude that the court's application of a preponderance of the evidence standard was not clearly erroneous.

## II.

[11] The next issue is whether the court's award of exemplary damages is clearly erroneous. Staggs argues that the court's findings that conflicting evidence was presented contradicts its conclusion that such "evidence supported a finding of 'criminally culpable' or 'heinous' conduct sufficient to award treble damages," and this error is compounded by the court's application of a preponderance standard. Appellant's Brief at 19. Staggs argues that the court did not make the necessary additional findings of criminal culpability to support an award of exemplary damages and that instead it "re-hashed findings of basic liability." *Id.* at 21. She asserts that "[w]hen this court remanded for consideration of the *Wysocki* standard and a requirement that the trial court make 'an additional finding of criminal culpability,' it surely intended that the trial court make some

---

[2] Ind. Code § 34-24-3-3 provides:

It is not a defense to an action for punitive damages that the defendant is subject to criminal prosecution for the act or omission that gave rise to the civil action. However, a person may not recover both:

   (1) punitive damages; and

   (2) the amounts provided for under section 1 or 1.5 of this chapter.

finding or draw some conclusion that extends beyond a mere finding of CVRA liability" and that "[b]asic liability alone is not enough to warrant exemplary damages." *Id.* She also argues that, in any event, exemplary damages in this case are not warranted where Staggs "actually went to the county department of health to ensure that her property was safe for future occupants," she missed the first day of trial and subsequently represented herself at the second day of trial, and much of the contradictory evidence came in the form of un-objected to hearsay by her estranged adult step-children. *Id.* at 22.

[12] In *Wysocki*, the Indiana Supreme Court discussed liability under the CVRA. The facts underlying the dispute in *Wysocki* involved the Johnsons, who sold a home they had owned and occupied for over thirty years, to the Wysockis in 2006. 18 N.E.3d at 602. During the time the Johnsons lived in the home, William Johnson performed most of the renovation and maintenance work himself. *Id.* The Sales Disclosure Form completed by Barbara Johnson indicated that there were no building code violations or other issues with the home, the Wysockis' inspector found no problems with the home, and the Wysockis purchased the home as-is in July 2006. *Id.* Shortly after moving in, however, the Wysockis discovered multiple issues, including "water leaks in the garage and over the front porch, structural problems with the front porch overhang and the foundation of the screened porch, and grossly substandard electrical wiring to the swimming pool." *Id.* They sued the Johnsons for fraudulently failing to disclose such defects, and, following a bench trial, the court awarded the Wysockis $13,805.95 in compensatory damages based upon

a common-law fraudulent misrepresentation theory but denying their request for additional damages, fees, and costs under the CVRA. *Id.* at 602-603.

[13] On transfer,[3] the Wysockis asked the Court "to adopt a bright-line rule that every knowing misrepresentation on a Sales Disclosure Form constitutes criminal deception, and thus gives rise to CVRA liability." *Id.* at 604. The Court declined their request, holding that "the trial court expressly relied on common-law fraudulent misrepresentation, and specifically refused to grant CVRA relief," which "was well within the trial court's discretion." *Id.* The Court went on to note that "[e]ven when a court awards compensatory damages under the CVRA . . . 'it is highly appropriate for the trial court to weigh any equities before deciding the amount, if any, owed' as exemplary damages," in which a court's decision not to award damages in excess of the actual loss "amounts to an 'implicit[ ] f[i]nd[ing] that the . . . conduct was not so heinous as to require exemplary damages'—even when the court awards attorney fees as the statute requires." *Id.* at 605. The Court espoused that "[t]hough the CVRA creates a civil remedy, its reliance on proof of a predicate criminal offense makes it inherently quasi-criminal," that "just as the "heinousness" of the defendant's conduct may properly factor into the factfinder's decision whether to award exemplary damages under the CVRA, the court's inchoate sense of the defendants' criminal culpability is a permissible

---

[3] The Court's opinion in *Wysocki* involved remand for a determination of whether the Johnsons had actual knowledge of the defects and was an appeal following remand. 18 N.E.3d at 603.

factor in assessing whether the CVRA predicate offense has been proven," and that "when the pleadings give the trial court a choice between an intentional tort and the quasi-criminal CVRA, the court necessarily has discretion to choose tort liability and reject quasi-criminal liability—even when, as here, the criminal offense and civil tort are so closely related." *Id.*

Thus, the Court in *Wysocki* held that, where the complaint is sufficiently open-ended to encompass alternative theories of liability, including common law fraudulent misrepresentation sounding in tort and quasi-criminal CVRA liability, the court has discretion to award compensatory tort damages only or damages under the CVRA. *Id.* at 605-606. In so holding, it also explained that an "assessment of criminality" is required to find liability under the CVRA, that such liability entitles the victim, at a minimum, to a recovery of costs and attorney fees in accordance with Ind. Code § 34-24-3-1, and that the level of "heinousness" shown may factor into the factfinder's decision whether to award exemplary (treble) damages under the CVRA. *Id.* The Court affirmed the trial court's decision to award compensatory damages for common-law fraudulent misrepresentation and decline an award under the CVRA. *Id.* at 606.

In this case, Staggs does not challenge the court's decision to impose CVRA liability *at all* – she is not disputing the award of costs and attorney fees totaling $7,040.00. Rather, her argument is that the court did not make the findings that her actions were sufficiently heinous to award exemplary damages under the CVRA. In its September Order, the court acknowledged that certain

"conflicting evidence is relevant to the Court's determination of whether the record shows 'criminally culpable' or 'heinous' conduct" regarding Staggs's representations regarding the septic system, and it made a similar observation regarding Staggs's representations concerning the basement moisture issues. Appellant's Appendix at 17. Having so acknowledged, the court went on to find unequivocally that Staggs "had actual knowledge of the defects in her home and the failure to disclose those defects were heinous acts," noting that such misrepresentations "could have impaired the health of the future occupants and significantly affected the expected normal life of the premises." *Id.* at 24. The court also found that Staggs "lied for financial gain putting her welfare ahead of the safety and welfare of the future occupants." *Id.* It concluded that such facts show that Staggs "did act in a 'heinous' and 'criminally culpable' manner when she completed her sales disclosure form," and accordingly it ordered that she pay treble damages, costs, and attorney fees to Buxbaum pursuant to the CVRA.

[16] The court in its September Order made an "assessment of criminality" as instructed by this court in *Staggs I*, and it concluded that Staggs acted in a heinous and criminally culpable manner sufficient to warrant exemplary damages. To the extent that she suggests that exemplary damages are not warranted because she represented herself *pro se* on the second day of trial after her attorney was suspended from practicing law, the September Order specifically addressed this in its findings and found that it was the result of a decision by Staggs. "A party may not take advantage of an error that he

commits, invites, or which is the natural consequence of his own neglect or misconduct." *Countrymark Coop., Inc. v. Hammes*, 892 N.E.2d 683, 695 (Ind. Ct. App. 2008) (citing *White v. State*, 687 N.E.2d. 178, 179 (Ind. 1997)), *trans. denied*. To the extent she asserts that the court's findings are based on inadmissible hearsay, we similarly observe that Staggs invited such errors when she chose to represent herself at trial and, in any event, she presented such issue in her initial appeal and this Court ruled that, as "no objections to this evidence were raised at trial," such arguments were waived. *Staggs I*, slip op. at 7. We cannot say that the court's September Order is clearly erroneous.

## Conclusion

[17] For the foregoing reasons, we affirm the court's September Order.

[18] Affirmed.

Baker, J., and May, J., concur.